726 A.2d 1052

**Timothy STRAUSER, Appellant,**

v.

**April R. STAHR, Appellee.**

**Steven Stahr, Intervenor.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1998.

Decided March 30, 1999.

Michael H. Sholley, Vincent R. Mazeski, Middleburg, for Timothy G. Strauser.

Orris C. Knepp, III, Lewistown, for Steven Stahr, Intervenor.

Donald Zagurskie, Mifflin, for April Stahr.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

The issue in this case is whether the presumption of paternity bars Timothy Strauser ("Appellant") from seeking to establish, on the basis of blood tests favorable to his claim, that he is the father of Amanda Stahr, the youngest of three children born to April Stahr ("Mother") during her marriage to Steven Stahr ("Husband"). Mother and Husband remain married, and they oppose Appellant's claim. The Superior Court concluded that in such circumstances the presumption does indeed bar Appellant from asserting such claim. We affirm.

On May 20, 1996, Appellant filed a custody complaint against Mother. In the complaint, Appellant asserted that he

is Amanda's father; that Mother had acknowledged his paternity, ensured that he enjoyed frequent visits with Amanda, and sometimes entrusted Amanda to his care; and that he, Mother, and Amanda had submitted to blood tests, the results of which disclosed a 99.99% probability that he was Amanda's father. Appellant also alleged that since receiving the blood test results, Mother had interfered with his relationship with Amanda. In view of the bond that existed between him and Amanda, Appellant asserted, it would be in the child's best interests if he were granted partial custody of her.

Mother filed preliminary objections in which she sought the dismissal of Appellant's complaint on the basis of the presumption that Amanda was a child of the Stahrs' marriage (also known as the presumption of legitimacy, or of Husband's paternity). Husband filed a petition to intervene, which was granted. He then filed preliminary objections seeking, as had Mother, to have Appellant's complaint dismissed based on the presumption of paternity. He also asserted that Appellant was equitably estopped from asserting paternity, as he had not financially or emotionally supported the child.

On November 25, 1996, following a hearing on preliminary objections, the trial court entered an order stating "that the blood test results are hereby admitted and this matter shall be scheduled for a hearing on the issue of what is best for the subject child." In an accompanying memorandum, the trial court recited its factual findings, as follows: 1) Mother and Appellant had engaged in sex on at least one occasion around the time of Amanda's conception; 2) Mother and Husband were also having sex during that period of time and were using the withdrawal method of birth control; 3) Mother and Husband were married at the time of Amanda's conception and birth, remained married, and had never separated; 4) Mother had held Amanda out to others in the community as Appellant's child and had promoted a relationship between Appellant and Amanda; and 5) Husband had exhibited an attitude of indifference toward Mother and the children, which attitude promoted Mother's relationship with Appellant.

In its opinion and order of November 25, 1996, the trial court acknowledged that if it were to rely on the case law submitted by Mother and Husband, the case would be dismissed, as Appellant had failed to overcome the presumption of paternity by showing non-access or impotency on the part of Husband. Nevertheless, the trial court concluded that Mother, having held Amanda out to be Appellant's child and having voluntarily submitted to blood testing for the purpose of determining paternity, was equitably estopped from contesting Amanda's paternity. The court then decided to admit the blood test results over Husband's objection and, on the basis of those results, concluded that the presumption of legitimacy had been overcome. Accordingly, the court directed that a hearing be held "on what is best for the child."

Mother and Husband filed separate appeals, which were subsequently consolidated, to the Superior Court. The Superior Court concluded that, in view of the fact that the Stahr family remained intact and Husband had assumed parental responsibility for Amanda, the presumption of paternity in Husband's favor was irrebuttable. Therefore, the court reasoned, the blood test results should not have been admitted into evidence. The court reversed the trial court's order and dismissed Appellant's complaint with prejudice. We granted allocatur to consider whether the presumption of paternity applied in the present case.

■ The presumption at issue—that a child born to a married woman is the child of the woman's husband—has been one of the strongest presumptions known to the law.[1] *John M. v. Paula T.*, 524 Pa. 306, 312–13, 571 A.2d 1380, 1383(Pa.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112

---

1. In *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380(Pa.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990), this Court noted that the designation "presumption of legitimacy" had outlived its usefulness, as the General Assembly had abolished the legal distinction between "legitimate" and "illegitimate" children. *Id.,* 524 Pa. at 313 n. 2, 571 A.2d at 1383–84 n. 2 (citing 48 P.S. § 167). The Court chose to refer instead to the "presumption that a child born to a married woman is a child of the marriage." *Id.* For the sake of conciseness, we will refer in this opinion to the "presumption of paternity," the paternity at issue being, of course, the husband's.

L.Ed.2d 107 (1990); *Cairgle v. American Radiator & Standard Sanitary Corp.*, 366 Pa. 249, 255, 77 A.2d 439, 442 (1951). Traditionally, the presumption can be rebutted only by proof either that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception. *Freedman v. McCandless*, 539 Pa. 584, 591, 654 A.2d 529, 532 (1995); *Jones v. Trojak*, 535 Pa. 95, 105, 634 A.2d 201, 206 (1993); *John M.*, 524 Pa. at 313–14, 571 A.2d at 1384; *Cairgle*, 366 Pa. at 255, 77 A.2d at 442. Thus, it has been held that, where the presumption applies, blood test results (existing or potential) are irrelevant unless and until the presumption has been overcome. *Jones*, 535 Pa. at 105, 634 A.2d at 206. It has also been held that, in one particular situation, no amount of evidence can overcome the presumption: where the family (mother, child, and husband/presumptive father) remains intact at the time that the husband's paternity is challenged, the presumption is irrebuttable. *Freedman*, 539 Pa. at 592, 654 A.2d at 533; *Coco v. Vandergrift*, 416 Pa.Super. 444, 448, 611 A.2d 299, 301 (1992). This is such a case.

Nevertheless, Appellant contends that the presumption of paternity is inapplicable. Citing this Court's plurality opinion in *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997), Appellant argues that the presumption will no longer be applied automatically, but only where such application will further the policy on which the presumption is based. That policy is, in Appellant's view, the best interests of the child. According to Appellant, application of the presumption will not promote the best interests of the child in this instance because of the "unique facts" of the case, including the asserted fact that Mother and Husband, although married, "do not enjoy the traditional marriage and family unit." Appellant also contends that Mother and Husband are estopped by their own conduct from invoking the presumption of paternity.

*Brinkley* concerned the paternity of Lisa Brinkley's daughter, Audrianna. Although Audrianna was conceived during Lisa's marriage to George Brinkley, Lisa, according to her own testimony, was not having sexual relations with her

husband during that time, but was having sexual relations with Richard King. George Brinkley moved out of the marital residence four months before Lisa was born, and the parties eventually divorced. Lisa filed a complaint for support against King and, after King denied paternity, a motion for adjudication of paternity. King responded with the assertion that Lisa was precluded from claiming that he was Audrianna's father because she had failed to rebut the presumption of her former husband's paternity. The trial court agreed, and the Superior Court affirmed. This Court granted allocatur "in order to review the way in which the presumption of paternity functions in Pennsylvania law." *Id.* at 246, 701 A.2d at 178 (footnote omitted).

In the lead opinion, the plurality (Chief Justice Flaherty, joined by Justice Cappy) set forth the fundamentals of the law of presumptive paternity, as summarized above. Among these fundamentals was the principle that "the presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage." *Id.* at 248, 701 A.2d at 179. The public policy in support of the presumption, the plurality explained, was "the concern that marriages which function as family units should not be destroyed by disputes over the parentage of children conceived or born during the marriage." *Id.* at 249, 701 A.2d at 180. Thus, "[t]hird parties should not be allowed to attack the integrity of a functioning marital unit, and members of that unit should not be allowed to deny their identities as parents." *Id.* (footnote omitted).

Having summarized the controlling principles, the plurality articulated a framework by which those principles should be applied:

> [T]he essential legal analysis in these cases is twofold: first, one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or

does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered. If the trier of fact finds that one or both of the parties are estopped, no blood tests will be ordered.

*Id.* at 250, 701 A.2d at 180.

This analysis, as the plurality recognized, begs the question of when the presumption was to be applied. The plurality's answer, taking into account the dramatic changes in the nature of male-female relationships that had occurred since the presumption was created, was that "the presumption of paternity applies in any case where the policies which underlie the presumption [namely, the preservation of marriages] . . ., would be advanced by its application, and in other cases, it does not apply." *Id.* at 250–51, 701 A.2d at 181 (footnote omitted). Thus, the plurality reasoned, the presumption did not apply in the case then at bar, as there was no marriage to protect. Accordingly, the Superior Court's order was vacated and the case was remanded to the trial court for a hearing on the issue of estoppel.

Justice Zappala concurred in the result but expressed the view that the traditional definition of non-access was unnecessarily restrictive. Justice Nigro, who also concurred in the result, suggested that "the better course of action in these cases is to allow the trial court to determine paternity on a case-by-case basis, unburdened by the obligatory application of a presumption or an estoppel theory." *Id.* at 253, 701 A.2d at 182 (Nigro, J., concurring and dissenting). In Justice Nigro's view, the trial court should be allowed to order blood testing of both the alleged and the presumed fathers. Justice Newman, joined by Justice Castille, filed a concurring and dissenting opinion. She concurred in the view that the presumption should not apply where its purpose would not thereby be served, but also opined that, when the presumption did apply, blood tests should be available to the parties as a means of rebutting the presumption. Justice Newman agreed with the plurality that the presumption did not apply in the case before the Court, but did not agree that the case presented a question of estoppel. Accordingly, she was of the view that

the case should be remanded for blood testing of Lisa, Audrianna, and King "to finally resolve the issue of Audrianna's father." *Id.* at 269, 701 A.2d at 190 (Newman, J., concurring and dissenting).

Although the several opinions in *Brinkley* reflect the criticism that has been directed toward the presumption of paternity in recent years, Appellant's reliance on that decision is unavailing. In the present case, the marriage into which Amanda was born continues. Indeed, despite the marital difficulties that they have encountered, Mother and Husband have never separated. Instead, they have chosen to preserve their marriage and to raise as a family the three children born to them, including Amanda. As this Court observed in *John M.*,

> [t]here is, in short, a family involved here. A woman and a man who have married and lived together as husband and wife, giving birth to and raising [several] children, have obvious interests in protecting their family from the unwanted intrusions of outsiders (even ones who have had serious relationships with the mother, father or children). The Commonwealth recognizes and seeks to protect this basic and foundational unit of society, the family, by the presumption that a child born to a woman while she is married is a child of the marriage.

*Id.* at 317–18, 571 A.2d at 1386 (citation omitted). Thus, the present case comes within the limited set of circumstances in which, according to the *Brinkley* plurality, the presumption of paternity continues to apply. In this case, moreover, the presumption is not rebuttable.[2]

**2.** In her dissenting opinion, Madame Justice Newman discerns a conflict between this holding and the Uniform Act on Blood Tests to Determine Paternity, now codified at 23 Pa.C.S. § 5104, which she views as codifying the public policy that blood testing may always be employed to rebut the presumption of paternity. Such position, however, has never commanded a majority of this Court. *See John M.*, 571 A.2d at 1385 (stating that "section 6133 of the Act [now 23 Pa.C.S. § 5104(c)] does not give the putative father the *right* to compel a presumptive father (husband) to submit to blood tests"); *see also John M.*, 571 A.2d at 1389 (Nix, C.J., concurring, and joined by all others)(declaring that "a third party who stands outside the marital rela-

Appellant argues for a different result by citing the "unique facts" of the case. He asserts that Husband and Mother's marriage lacks love and intimacy and exists in name only; Husband and Mother have experienced conflict caused by adultery; Mother represented to others that Amanda was Appellant's child; Husband suspected that Amanda was not his child; and Husband exhibited an attitude of indifference toward Mother and Amanda. In sum, Appellant asserts, Mother and Husband "do not enjoy the traditional marriage and family unit."

While Appellant's assertions may be factual, they are not unique. To the contrary, they indicate that the marriage of Mother and Husband, like many, has encountered serious difficulties. It is in precisely this situation, as was suggested in *John M.*, that the presumption of paternity serves its purpose by allowing husband and wife, despite past mistakes, to strengthen and protect their family. Appellant's argument on this point is therefore without merit.

Nor are Husband and Mother estopped, as Appellant suggests, from invoking the presumption.

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.

*Brinkley*, 549 Pa. at 248 n. 5, 701 A.2d at 180 n. 5 (quoting *Freedman*, 539 Pa. at 591–92, 654 A.2d at 532–33). As the plurality noted in *Brinkley*, the question of estoppel does not arise unless and until "the presumption has been rebutted or is inapplicable...." *Id.* at 250, 701 A.2d at 180. Here, the

tionship should not be allowed, for any purpose, to challenge the husband's claim of parentage").

presumption applies and is non-rebuttable. Appellant's reliance on the doctrine of estoppel is therefore unavailing.

Order affirmed.

Justice NIGRO files a Dissenting Opinion.

Justice NEWMAN files a Dissenting Opinion in which Justice CASTILLE joins.

NIGRO, Justice, dissenting.

Since I believe that the trial court properly found that the blood test results disclosing a 99.99% probability that Appellant is Amanda's father were admissible, I respectfully dissent.

In effect, the majority concludes that the "presumption of paternity" automatically forecloses any consideration of the blood test results at issue here, which were voluntarily taken and all but confirm Appellant's status as Amanda's biological father. By rigidly applying this presumption, the majority only perpetuates the disturbing trend noted by my concurring and dissenting opinion in *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997) (plurality) (Nigro, J., concurring and dissenting). There, I observed that the strict application of the presumption doctrine has only acted as an obstacle to the discretion of the trial court to order and use blood testing of the parties, which is "the single most valuable technique available to a court in determining parentage." *Id.* at 253, 701 A.2d at 182.

As noted by the majority, my opinion in *Brinkley* advocates that the better approach in paternity matters would be to allow trial courts to determine paternity on a case-by-case basis, unburdened by the obligatory application of the presumption doctrine. *Id.* Such an approach permits a court to weigh the relevant evidence and circumstances of each particular situation, including blood test results, concerns as to the maintenance of an existing family unit and the interests of the child, in order to reach an equitable result. *Id.* at 254, 701 A.2d at 182.

The benefits of this approach are exemplified by the circumstances of the instant case. Here, voluntary test results representing virtually conclusive evidence of Appellant's paternity are available and undeniably probative of the question of who Amanda's biological father is. Additionally, though Amanda's mother and her husband remain married, I do not believe that their marital status should serve as a license to completely disregard a biological father's interest in having a relationship with his child. Moreover, for medical and other reasons, it may very well be in the best interests of Amanda to know the identity of her biological father. It is simply unreasonable, in my view, to preclude the trial court from considering the interests of those involved and the evidence of the blood tests solely on the basis of a presumption that is no longer reflective of today's social reality.

For these reasons, I believe the trial court properly admitted the blood test results into evidence and directed that a hearing be held on the issue of what is best for Amanda. Thus, I would reverse the Superior Court and affirm the order of the trial court.

NEWMAN, Justice, dissenting.

For the reasons set forth below, I respectfully dissent. While I agree that the "presumption of paternity" attaches to the facts of this case, I disagree that it is irrebutable. Rather, this presumption should be open to rebuttal by reliable blood test evidence.

April and Steven Stahr have been married since April 4, 1992 and they continue to be married, reside together and have never been separated. The couple has three children, all born during the marriage. The custody dispute that underlies this suit involves the youngest of these three children. The record indicates that April Stahr, at one time, acknowledged that Mr. Strauser, not her husband, was this child's father and allowed Mr. Strauser frequent visits with the child. April, the child and Mr. Strauser even submitted to voluntary blood tests, which show a 99.9% probability that Mr. Strauser is the child's father. Mr. Strauser filed a complaint against April

Stahr seeking partial custody of his daughter after April began to interfere with his visitation with the child. April's husband, Steven, intervened in the action and requested that the complaint be dismissed because of the presumption that he was the child's father. The trial court overruled Mr. Stahr's objections, admitted the blood test evidence and ordered a hearing to determine what custody arrangement was in the best interests of the child. The Stahrs filed their appeal of this determination before the trial court could hold the custody hearing.

The core issues involved in this appeal are whether the trial court erred in refusing to dismiss Mr. Strauser's complaint based on the "presumption of paternity" in favor of Mr. Stahr and whether the court erred in admitting genetic blood test evidence to rebut that presumption. In order to determine whether the presumption of paternity attaches to a particular case, we must first decide if the case properly advances the purpose of the presumption. *Brinkley v. King,* 549 Pa. 241, 260–61, 701 A.2d 176, 185–86 (1997). Here, I agree that the presumption of paternity applies because the purpose of the presumption is indicated in the facts before us—specifically that the Stahrs' marriage is currently, and at all relevant times has been, intact. *Id.,* (Newman J. concurring and dissenting statement)(purpose of presumption is limited to preservation of the marriage).

Next, we must address whether the presumption may be rebutted. *Id.* The Majority posits that in this case, where the marriage is intact, "public policy" requires that the presumption be irrebutable. I disagree. It is generally not for this Court to make such assertions of "public policy" unless such policy is clear. *See, e.g., Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 89 L.Ed. 744 (1945)("public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest"); *Mamlin v. Genoe,* 340 Pa. 320, 324,17 A.2d 407, 409 (1941)("in our judicial system the power of courts to formulate pronouncements of public policy is sharply restricted; otherwise

they would become judicial legislatures rather than instrumentalities for the interpretation of the law.").

Here, the Majority's conclusion that "public policy" requires an irrebutable presumption in favor of Mr. Stahr is erroneous because it is in direct conflict with the plain language of the Uniform Act on Blood Tests to Determine Paternity (the Act). 23 Pa.C.S.A. § 5104(c). Instead, the legislature has codified the "public policy" of this Commonwealth and clearly and expressly provided that a court may compel interested parties to submit to blood testing, and that such blood testing can rebut the presumption of paternity. 23 Pa.C.S.A § 5104(c) and (g) [1]. Moreover, as I stated in *Brinkley:*

> We would be both naive and remiss to perpetuate the strength of this presumption and ignore the results of reliable scientific tests;
>
> *    *    *
>
> Pennsylvania is fast becoming one of only a minority of states that does not accept the results of blood tests that disprove the husband's paternity to rebut the presumption. Approximately two-thirds of the states currently have statutes permitting blood tests to be considered in the determination of paternity. HOMER H. CLARK, JR., 1 THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES 340 (2d ed.1987). We should join the majority of states and accept these reliable scientific tests to rebut the

---

1. Sections 5104(c) and (g) state as follows:

    (c) Authority for test.—In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

    (g) Effect on presumption of legitimacy.—The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child.

presumption that a child born to a married woman is her husband's child.

*Brinkley v. King,* 549 Pa. at 264, 701 A.2d at 188.

Thus, for the reasons I have set forth here and in *Brinkley,* I believe that the trial court did not err in refusing to dismiss Mr. Strauser's custody complaint solely on the basis of the presumption of paternity and did not err in admitting the blood test evidence. Accordingly, I would reverse the decision of the Superior Court and reinstate the decision of the trial court so that the court can conduct a hearing to determine the best interests of the child involved.

Justice CASTILLE joins this dissenting opinion.