## Michaels v. Michaels

24

C.P. of Perry County, no. 99-135.

*Richard Gaffney,* for father.
*Robert B. MacIntyre,* for mother.
*Kathy A. Morrow,* for child.

REHKAMP, *J.,* November 12, 1999—

## FINAL MEMORANDUM

This is a custody case that was appealed following the entry of a July 16, 1999 order, which denied a request by natural mother to order DNA testing to determine whether or not her estranged husband, Ronald Michaels, was the natural father of the subject child. It should be noted that the parties to this appeal have another child to which there is a stipulation of custody entered in this matter.

My July 16, 1999 order incorporated a previous order entered on April 30, 1999, copies of which are attached hereto and incorporated herein by reference thereto. Basically, this case involves a dispute over paternity in a custody context of a child born to the marriage of the parties, with conception occurring while the parties were together and birth occurring after separation of the parties. Mother left putative father a short time after conception and went to live with her boyfriend, whom she claims is the natural father of the subject child. Mother filed for divorce sometime after the birth of the child and continues to reside with her boyfriend. Husband contests the divorce and wants visitation rights with respect to the subject child pending appeal of this action.

This court is satisfied that, according to the two most recent Supreme Court decisions on point, being *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997) and *Strauser v. Stahr,* 556 Pa. 83, 726 A.2d 1052 (1999), because there is no intact family to preserve in this case, the presumption of paternity does not even apply to the facts of this case. In that event, this court must then consider the estoppel evidence, which "If the trier of fact finds that one or both of the parties are estopped, no blood tests will be ordered." *Brinkley v. King* at 250, 701 A.2d at 180. In reviewing the *Brinkley v. King* case, the definition of es-

toppel is provided in a reference to another case of *Freedman v. McCandless,* 539 Pa. 584, 591, 592 n.5; 654 A.2d 529, 532, 533 n.5 (1995), as follows:

"Estoppel in paternity actions is merely the legal de- ·termination that because of a person's conduct, (*e.g.,* holding out the child as his own, or supporting the child), that:

"[U]nder certain circumstances, a person might be estopped from challenging paternity where that person has, by his or her conduct, accepted a given person as father of the child. . . ."

The doctrine of estoppel will not apply when evidence establishes that the father failed to accept the child as his own by holding it out and/or supporting the child . . . only when the doctrine of estoppel does not apply will the mother be permitted to proceed with a paternity claim against a putative father with the aid of a blood test.

The Supreme Court in *Brinkley* then goes on to state that the doctrine of estoppel embodies the fiction that the person who has cared for the child is the parent. Under the circumstances of the instant case, Ronald Michaels, as the putative father, has not cared for the child as mother has denied him any visitation rights with respect to the subject child and has lived with her boyfriend, whom she claims is the natural father of the child. The boyfriend apparently has been acting in the role of father and was even placed on the birth certificate by mother as the natural father of the subject child.

Based upon the above analysis, it appears to this court that if this case goes to the Supreme Court of Pennsylvania, then in all likelihood blood testing would be ordered by the court. However, in the meantime this court is faced with the prospect of ordering visitation rights of the pu-

tative father and husband, Ronald Michaels, with the subject child over strenuous objection of mother.

If mother had decided to stay with husband rather than live with boyfriend, this court is satisfied that, according to the Supreme Court's decisions referred to above, that the policy of preservation of the family unit would dictate that no paternity tests would be ordered as the presumption of paternity would not have been rebutted under the facts of this case wherein it is clear that both boyfriend and husband had access to mother at time of conception and there is no question that husband is potent, as they have another child to their marriage. Then the estoppel analysis would be considered and this court would have to consider whether the act of mother placing boyfriend's name on the birth certificate as the father, plus any other circumstances would have estopped either party from requesting a blood test.

It just seems to the undersigned judge, who was also the presiding judge in the *Strauser v. Stahr* case referred to above, that the best interests of the child in a custody action wherein the issue of paternity is contested does not seem to be the overriding concern of the appellate courts. In the *Strauser v. Stahr* case, the natural father was precluded from establishing his paternity and allowing him any visitation whatsoever with the child because of the intact family unit which the court desires to preserve. The best interests of the child in that case would have been promoted by allowing visitation in this court's opinion. In this case, it seems that the equities favor the husband, Ronald Michaels, but because of the decision of the mother to separate from husband and take up residence with boyfriend, husband will lose any rights he has with respect to the subject child, assuming blood testing determines that he is not the natural father. Paren-

thetically, it should be noted that mother and boyfriend did have blood testings performed, apparently, on the subject child, the results of which were not admitted by this court.

Husband desires to preserve the marriage and has contested the divorce action by filing a request for counseling and has pursued vigorously this custody action to establish a relationship between himself and the child, who is the subject of this proceeding. It should also be noted that there is another child to the parties, who is only a couple years old and the subject child is less than a year. Morally speaking, it seems to this court that the Supreme Court's policy on preserving the family unit backfires under the facts of this case. By the mere act of unilaterally separating from her husband, wife can establish a complete defense to a custody case involving her husband and child or children. If wife's relationship with boyfriend and natural father does not continue and the parties would reunite, then where does the law stand on blood testing at that point in time?

Lower courts should be allowed to decide custody cases on what is best for the children involved in the dispute and not upon super technical rules which don't always promote the concept of preserving the family unit. Blood tests should be allowed by the lower court where it is in the best interests of the child to do so. Rather than applying estoppel concepts, the equities of the case should decide when blood tests are admissible to prove paternity in a custody case.

The admission of blood test results under the facts in this case do not promote a family unit, but in fact, destroy a family unit wherein another child to the parties is affected by the introduction of blood test results.

Times have changed and the legislature has recognized these changes and perhaps promoted same by relaxing restrictions on obtaining divorce by mutual consent and also the ordering of DNA tests to determine paternity and a declaration of legitimacy of children by virtue of said test results to inherit from their parents' estates. Custody cases should not be decided by archaic rules aimed at preserving the family unit, which units are destroyed by the unilateral acts of one spouse as has occurred in this case by the wife.

## ORDER

And now, July 16, 1999, after telephone conference with counsel of record, including counsel for the child, Kathy Morrow, Esquire, and pursuant to the order dated April 30, 1999, which order is incorporated herein by reference thereto, it is hereby ordered and directed that no DNA testing shall be required in this case, as Ronald Michaels is the presumed father of the subject child, who was born during the marriage, and it is further ordered and directed that a visitation schedule shall commence between Ronald Michaels and the subject child, with the assistance of Kathy Morrow, Esquire, who represents the child in this matter.

## ORDER

And now, April 30, 1999, upon review of the briefs submitted by counsel of record, it is hereby ordered and directed that Ronald Michaels is presumed to be the fa-

ther of the subject child, Cassidy Dugan, who was conceived and born during the marriage of the parties, and defendant has failed to prove non-access or impotency of plaintiff to rebut said presumption of paternity. However, since the marriage of the parties is no longer intact as the parties separated sometime around conception of the subject child and defendant filed for divorce a few days after the birth of said child and is living with Michael Dugan, with whom she had an affair during the relevant time period, this court must either direct DNA testing and reserve its decision to grant visitation and/or custody rights in plaintiff, or deny defendant's request for DNA testing and grant plaintiff custody and/or visitation rights at this time. Before doing so, this court will appoint counsel for the subject child as this court is inclined to grant the request for DNA testing based upon its understanding of the current case law.

Kathy A. Morrow, Esquire, is hereby appointed as attorney for the subject child to advance argument on behalf of said child as to what is in the child's best interest under the context of this case. After review of the file, upon request of court-appointed counsel for said child, this court will schedule an argument conference either in person or by phone.