**Thompson v. Hoover**

*Sandra Edwards Gray,* for plaintiff.
*N. Christopher Menges,* for defendant.

HOOVER, *J.,* December 22, 2005—The custody complaint in the above-captioned matter was filed by the plaintiff, Tony P. Thompson, on October 20, 2004. The defendant, Erin Hoover, filed preliminary objections to the complaint challenging the plaintiff's standing to pursue a custody action. The matter was scheduled for a hearing on July 8, 2005. The issue before the court at the hearing was whether the presumption of paternity applied, such that plaintiff lacked standing to pursue custody. We entered an order on September 7, 2005, granting defendant's preliminary objections. Based upon the facts presented at the hearing, we found that the presump-

tion applied and ruled that plaintiff was estopped from making a custody claim. Plaintiff appeals that decision.

## FACT AND BACKGROUND

The defendant in the case, Erin Hoover, age 32, was married to Ryan Hoover, age 32, on June 6, 1999. During the period of time at issue, Ms. Hoover was employed at Franklin and Marshall College in Lancaster. Her husband Ryan Hoover is employed as a civil engineer.

The plaintiff, Mr. Thompson, is a single man and is employed at Franklin and Marshall as an assistant football coach. Mr. Thompson and the defendant met in February of 2003 while Erin Hoover was working at Franklin and Marshall. Erin Hoover and Mr. Thompson had a relationship between August 24, 2003 and February 2004. (Notes of Testimony, July 8, 2005, pp. 8, 12.) In October 2003, Erin Hoover left the marital residence and leased an apartment in Lancaster. (N.T. pp. 7-8.) Mr. Thompson also lived in the Lancaster area. During this period of time, Ms. Hoover had an intimate relationship with Mr. Thompson and spent time at his apartment in Lancaster. (N.T. p. 25.) She met Mr. Thompson's family.

The record reflects that except during the time period of October 2003 through January of 2004, Ms. Hoover and her husband have resided at their current address in Harrisburg. (N.T. p. 7.) When Ms. Hoover leased the apartment in Lancaster, she did so with her husband's approval. (N.T. p. 48.) The record reflects that although Ms. Hoover leased the apartment, the marital home largely remained intact. All of Ms. Hoover's mail, life insurance and financial information remained in joint names

with her husband Ryan. They both continued to contribute to marital expenses. (N.T. pp. 17-22, 54.) Most significantly, the wife and husband continued to see each during this period of time and were involved with counseling individually and jointly to keep their marriage intact. ( N.T. p. 16.) Ms. Hoover testified that at no point did she consider her marriage over. (N.T. p. 25.) Ms. Hoover testified that during the period of the fall of 2003 through January of 2004, she and her husband maintained communication with each other, spent Christmas together with her family, and attended counseling sessions. (N.T. pp. 11-12.) Ms. Hoover testified that the purpose of their maintaining contact was to see if the two could work on their marriage and keep it together. (N.T. pp. 12, 16.)

Ms. Hoover testified that at no time did she consider herself legally separated from her husband, nor did she seriously consider or file for divorce, seek legal representation or request support. (N.T. pp. 17, 23.) Ms. Hoover and her husband began looking for a new home together in January 2004. (N.T. p. 20.) Mr. and Mrs. Hoover continued attending counseling sessions throughout the pregnancy of Ms. Hoover. Mr. and Mrs. Hoover paid Ms. Hoover's pre-natal care expenses. The husband's name is on the child's birth certificate. (N.T. p. 22.) The record reflects that Mr. Hoover considers the child as his own, and is committed to raising her as his own. (N.T. p. 15.) The record reflects that the husband and wife have lived as an intact marital family since February 2004. (N.T. p. 12.)

The wife's romantic relationship ended with Mr. Thompson in January 2004. Mr. and Mrs. Hoover did

experience another marital disagreement in the month of February, and Ms. Hoover engaged in a sexual relationship with the plaintiff. Nevertheless, since the wife's return to the marital residence in January 2004, husband and wife have continued to live together as an intact family.

## LEGAL DISCUSSION

### A. *An Irrebuttable Presumption of Paternity Applies in the Instant Matter*

Both counsel have properly directed the court to *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997). Pursuant to *Brinkley,* the premise that the strong presumption that a child conceived or born during marriage is a child of that marriage serves the public policy of promotion of marriage and an intact family. The presumption supports the policy that a marriage which functions as a family unit should not be destroyed by disputes over the parentage of a child conceived or born during the marriage. Specifically, third parties should not be allowed to attack the integrity of a functioning marital unit. *Brinkley,* 549 Pa. at 250, 701 A.2d at 181.

Further, we are guided by *Strauser v. Stahr,* 556 Pa. 83, 726 A.2d 1052 (1999). In *Strauser,* the Supreme Court of Pennsylvania identified the presumption that a child born to a married woman is the child of the woman's husband as one of the strongest presumptions known in law. *Id.* at 87-88, 726 A.2d at 1053-54. The court in *Strauser* stated:

"Traditionally, the presumption can be rebutted only by proof either that the husband was physically inca-

pable of fathering a child or that he did not have access to his wife during the period of conception. (citations omitted) Thus, it has been held that, where the presumption applies, blood test results (existing or potential) are irrelevant unless and until the presumption has been overcome. *Jones v. Trojak,* 535 Pa. 95, 105, 634 A.2d 201, 206 (1993). It has also been held that, in one particular situation, no amount of evidence can overcome the presumption: where the family (mother, child and husband/ presumptive father) remains intact at the time that the husband's paternity is challenged, the presumption is irrebuttable. *Freedman v. McCandless,* 539 Pa. 584, 592, 654 A.2d 529, 533 (1995). *Coco v. Vandergrift,* 416 Pa. Super. 444, 448, 611 A.2d 299, 301 (1992)." *Strauser v. Stahr,* 556 Pa. 83, 84, 726 A.2d 1052, 1054.

We find that the case before us falls within the parameters of *Brinkley* and *Strauser.* The marriage into which this child was born existed for four years prior to the temporary separation and continues. During the period of temporary separation only the physical location of the husband and wife changed, while even then Ms. Hoover and her husband continued to work on their marital relationship. The mother and husband in this case, while temporarily separated, remained in a marriage which was intact. They continued to see each other, attended counseling, jointly met their financial obligations, and made important family decisions together. Moreover, this child was born in October 2004, and the husband and wife were together undisputedly from February 2004 until October 8, 2004. The parties have remained together and have chosen to preserve their marriage and raise their family.

We are guided by the language of the court in *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990): "[t]here is, in short, a family involved here. A woman and a man who have married and lived together as husband and wife, giving birth to and raising [several] children, have obvious interests in protecting their family from the unwanted intrusions of outsiders (even ones who have had serious relationships with the mother, father or children). The Commonwealth recognizes and seeks to protect this basic and foundational unit of society, the family, by the presumption that a child born to a woman while she is married is a child of the marriage." *John M.* at 317-18, 571 A.2d at 1386.

We find that the present case comes within those circumstances in which the presumption of paternity continues to apply. We find that the presumption is not rebuttable.[1]

### B. *The Court's Order of September 7, 2005 Did Not Constitute an Improper Termination of Parental Rights Without a Hearing*

Plaintiff's pleadings filed prior to the instant appeal raise no issue as to an alleged improper termination of parental rights, and therefore any such argument is waived.

---

1. We are not unmindful of the views of others regarding the right to compel blood testing. We believe that the plurality of the Supreme Court has decided that a third party that stands outside of an intact marital relationship should not be allowed for any purpose to challenge the husband's claim of parentage. *John M.* at 323, 571 A.2d at 1389.

Even were it deemed not waived, clearly, the proceeding before this court is not tantamount to an involuntary termination of parental rights because parental rights have not been established. For the reasons we have set forth above, the presumption of paternity within the marriage is irrebuttable. There are no parental rights to terminate because they have not been established.

### C. *The Court Properly Determined That the Presumption of Paternity Would Serve an Intact Family*

As the Pennsylvania Supreme Court in *Strauser v. Stahr, supra,* has stated: No amount of evidence can overcome the presumption: where the family (mother, child, and husband/presumptive father) remains intact at the time that the husband's paternity is challenged; the presumption is irrebuttable. *Freedman v. McCandless,* 539 Pa. at 592, 654 A.2d at 533; *Coco v. Vandergrift,* 416 Pa. Super. 444, 448, 611 A.2d 299, 301 (1992). In the present case, the plaintiff, a third party, challenged the husband's paternity at a time during which this family was intact. There is no question that the mother and husband separated from September 2003 until the middle of February 2004. As we have set forth at length, even during that time, the mother and husband continued to work on their marital relationship, continued to be together, spend holidays together, birthdays together, maintain common health insurance. Neither mother nor husband ever filed for divorce or sought a formal separation agreement. Likewise, it is not disputed that the mother in this case had an intimate relationship with the plaintiff, Tony

Thompson, during that period of time, but from February 2004 until October 2004 through the time of the hearing on July 8, 2005, the mother, father and child indisputably lived together as an intact family. The mere fact that the mother and father separated physically for a period of six months in order to work on their marriage and during that separation Ms. Hoover had sexual relations with Mr. Thompson does not overcome the presumption of the husband's paternity in this case.

In reaching this conclusion, we have looked at the totality of the evidence before us. We applied the presumption of paternity after having found that during the physical separation, Mr. and Mrs. Hoover remained committed to their marriage and both put forth an effort to preserve their marital relationship, despite the mother's intimacy with the plaintiff.

As a matter of law, this court finds that the presumption of paternity is appropriately applied to this marriage and this family.