J-E02010-15
J-E02011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| M.C. AND D.T. | |
| Appeal of: M.C. | No. 412 EDA 2014 |

Appeal from the Order Entered January 28, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 12-09900

| | |
|---|---|
| J.J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| M.C. AND D.T. | |
| Appeal of: D.T. | No. 416 EDA 2014 |

Appeal from the Order Entered January 28, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 12-09900

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., DONOHUE, J.,
         SHOGAN, J., ALLEN, J., LAZARUS, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 14, 2015**

The presumption of paternity provides that a child conceived or born

during a marriage is presumed to be a child of the marriage. It is one of the

strongest legal presumptions and renders blood test results irrelevant unless

and until the presumption is overcome. When there is an intact marriage, a third party cannot overcome this presumption. The relevant time to examine whether the marriage is intact is at the time of the challenge to a husband's paternity. This is a question solely for the trial court sitting as the factfinder.

In the two cases before us,[1] the trial court found that the circumstances of an extramarital affair were such that it determined that an existing marriage was not an "intact marriage" for purposes of the presumption of paternity. The trial court based its finding on a determination that the husband and wife testified without any credibility when they claimed their marriage was intact. The trial court thus concluded that the presumption is inapplicable as there was no intact marriage at the time of the challenge to husband's paternity.

The question in this case is whether the trial court abused its discretion in determining that the presumption of paternity did not apply. Applying well-established case law, which provides that the factfinder is the sole judge of credibility and may believe all, part or none of the evidence presented, we find no abuse of discretion and affirm.

For ease of reading, M.C. is the wife; D.T. is the husband; and J.J. is the paramour. M.C. and D.T. are legally married and have been since June 21, 2007. P.T. was born September 2012, and D.T. is listed as the father on

---

[1] We consolidate these appeals *sua sponte*.

the birth certificate. Prior to P.T.'s birth, M.C. engaged in a prolonged extramarital affair with J.J.

M.C. and J.J. began communicating online in June 2011. In July, the pair started a physical affair. She informed him that she was separated from her husband. That summer M.C. and J.J. vacationed together along with his family and she told them that the two of them were dating. The relationship continued and she occasionally spent the night at the home of J.J.'s mother, leaving for work from there in the morning. M.C. introduced J.J. to her family and friends. As of Labor Day 2011, M.C. informed J.J. that she was pregnant. She never informed her husband of the pregnancy. J.J. held himself out as the father to their friends and family.

That September M.C. and J.J. leased an apartment together where she spent three to four nights per week. In October, M.C. miscarried. At that time, she did not tell J.J. of the miscarriage. She then became pregnant again. At the time of her conception, she was having sex with both J.J. and D.T. Both men knew about this pregnancy, but not of each other.

By late winter or early spring of 2012, M.C. informed J.J.'s family that she was separated from her husband. In March 2012, M.C. told J.J. that her divorce was finalized. J.J.'s family held a baby shower for her. So did D.T.'s family. In April, M.C. and J.J. had sex in the home she shared with D.T. The plan was for J.J. to move into M.C.'s home and the couple ended their lease on the apartment in May. M.C. spent Mother's Day with J.J. Also in May, J.J.

called D.T. and asked what the status of his relationship was with M.C. D.T. told J.J. that they were still married and expecting a child.

In June, J.J. learned, in a motel room, about the miscarriage, but M.C. still claimed to be divorced and assured him the child was his. J.J. attended OB/GYN appointments. When P.T. was born in September 2012, J.J. and his family arrived at the hospital, but were denied access to the child.

D.T. testified that he did not see his wife often because she had a demanding job (M.C. is a registered nurse), friends, and familial obligations, but that the couple usually spent time together during holidays. M.C. did not tell him about the miscarriage until January 2013, approximately six months after she had informed J.J.

Shortly after M.C.'s refusal to permit J.J. contact with the child, his counsel sent a certified letter to M.C., demanding contact with the child. Denied contact with the child, J.J. filed a complaint to establish paternity on December 6, 2012. In preparation for a pretrial conference, M.C. filed a petition to strike any references to a paternity test previously obtained by J.J. and M.C. After which, D.T. filed a petition to intervene. M.C. and D.T. filed preliminary objections asserting that J.J. failed to state a claim for relief in light of the presumption of paternity. The trial court granted M.C.'s motion to strike the paternity test from the record and granted D.T.'s petition to intervene.

The trial court conducted a two-day hearing, during which M.C. and D.T. strenuously maintained that their marriage was intact. On January 28, 2014, the trial court entered an order overruling the preliminary objections and granting J.J.'s request for genetic testing. Attached to the order are 105 factual findings made by the trial court. Of particular note, the trial court found that M.C. and D.T. testified without any credibility that the marriage was intact. M.C. and D.T. timely filed their notices of appeal and M.C. moved to stay the order pending the outcome of this appeal.

On appeal, M.C. and D.T. purport to raise multiple issues, but essentially raise just one: that the trial court erred in refusing to apply the presumption of paternity. We disagree.

We will not disturb the trial court's order unless there has been an abuse of discretion. *See Doran v. Doran*, 820 A.2d 1279, 1282 (Pa. Super. 2003).

> An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough that we, if sitting as a trial court, may have made a different finding.

*Id*. (quotation marks, citations, and brackets omitted).

One of the strongest presumptions in Pennsylvania law resides with the notion that "a child conceived or born during a marriage is presumed to be a child of the marriage[.]" *CW v. LV*, 788 A.2d 1002, 1005 (Pa. Super.

2001) (citation omitted). *See also Strauser v. Stahr*, 726 A.2d 1052, 1053-1054 (Pa. 1999). The preservation of intact marriages is the purpose of the presumption of paternity. *See Fish v. Behers*, 741 A.2d 721, 723 (Pa. 1999). The presumption renders blood test results irrelevant unless and until the presumption is overcome. *See Strauser*, 726 A.2d at 1054. "[T]he presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage." *CW*, 788 A.2d at 1005 (citation omitted). *See also K.E.M. v. P.C.S.*, 38 A.3d 798, 806-807 (Pa. 2012) ("As to the presumption of paternity, we note only that recent Pennsylvania decisions have relegated it to a substantially more limited role, by narrowing its application to situations in which the underlying policies will be advanced (centrally, where there is an intact marriage to be protected)."); *Strauser*, 726 A.2d at 1054.

The relevant time to examine whether the marriage is intact is at the time of the challenge to a husband's paternity. *See*, *e.g.*, *Strauser*, 726 A.2d at 1054; *Vargo v. Schwartz*, 940 A.2d 459, 463 (Pa. Super. 2007). This is exclusively a question for the factfinder. *See id*., at 467 ("Whether the family is intact and there is a marriage to preserve are questions of fact, which, like all questions of fact, fall squarely within the realm of the fact-finder.").

When acting as the factfinder, the trial court is to resolve "assessments of credibility and conflicts in evidence." *Turney Media Fuel*

*Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 841 (Pa. Super. 1999) (citation omitted). The trial court "is entitled to weigh the evidence presented and assess its credibility, and in doing so is free to believe all, part, or none of the evidence." *Vargo*, 940 A.2d at 467 n.5. "The judge may reject contradicted or even uncontradicted testimony where, for any reasons, its credibility is doubtful." *V-Tech Services, Inc. v. Street*, 72 A.3d 270, 280 (Pa. Super. 2013) (citation omitted). It is not for us, as an appellate court, to reexamine the trial court's credibility determinations and substitute our judgment for the factfinder's. *See Toll Bros., Inc.*, 725 A.2d at 841.

The disposition of this appeal turns on whether M.C. and D.T. had an intact marriage at the time of the challenge to husband's paternity. We stress that the trial court observed the witnesses in person at the two-day hearing. The trial court methodically reviewed the testimony presented during the two-day hearing, *see* Amended Opinion, 2/25/14, at 1-17, and determined that M.C. and D.T. testified without any credibility. *See id*., at 25.

The trial court found that M.C.'s testimony about having an intact marriage "*at any time* suggested by the defense [i.e., M.C. and D.T.] had no credibility or any plausibility of truth." *Id*. (emphasis added). The trial court characterized D.T.'s testimony as to whether there was an intact marriage as "doubtful, not reasonable to believe, incomprehensible and beyond the realm of plausibility." *Id*.

M.C. and D.T. maintain that the trial court's finding constitutes an abuse of discretion as they offered *uncontradicted* testimony that they had an intact marriage. **See**, **e.g.**, M.C.'s Brief, at 11; D.T.'s Brief, at 13. That the testimony was uncontradicted is simply irrelevant. As noted, the trial court can disregard "uncontradicted testimony where, for any reasons, its credibility is doubtful." **Street**, 72 A.3d at 280 (citation omitted).

The trial court did not believe M.C.'s and D.T.'s testimony. The trial court found that the marriage at the time of the challenge to husband's paternity (and before that as well) was a sham. It disbelieved the assertions of reconciliation. It was well within the trial court's discretion to make these findings. **See**, **e.g.**, **Vargo**. We are bound by the trial court's credibility determinations. **See Toll Bros., Inc.**, 725 A.2d at 841.

Based on the findings, the presumption of paternity simply has no application in this case—there was no intact marriage.[2] Accordingly, we

_____

[2] M.C. and D.T. also argue that even if the marriage was not intact, J.J. still had to show "proof of sterility or lack of access" to rebut the presumption of paternity. D.T.'s Brief, at 6. **See also** M.C.'s Brief, at 12. The presumption may be overcome if the presumptive father was physically incapable of procreation or had no access to the wife. **See Vargo**, 940 A.2d at 463. They claim that J.J. failed to provide this proof. There is, however, a glaring error with their argument: If the marriage is not intact, there is no presumption. **See id**. ("When there is no longer an intact family or a marriage to preserve, then the presumption of paternity is not applicable."). J.J. simply did not provide such proof to rebut the presumption because the trial court found the presumption did not apply.

affirm the order overruling the preliminary objections and granting the request for genetic testing.

Order affirmed.

President Judge Gantman, President Judge Emeritus Bender, Judges Donohue, Shogan, Lazarus and Mundy join the majority.

Judge Stabile filed a dissenting memorandum.

Judge Allen did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015