J-S28018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| P.W.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.L.T. AND R.O.T. | : | |
| | : | |
| Appellants | : | No. 131 MDA 2019 |

Appeal from the Order Entered January 4, 2019
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2018-00047

BEFORE: BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 15, 2019**

R.L.T. and R.O.T. (collectively, "Appellants") appeal from the order awarding R.L.T. primary custody of M.L.T. ("Child") and awarding P.W.A. partial custody and from the order denying R.L.T.'s preliminary objection. Appellants claim the trial court erred when it found the doctrine of presumption of paternity did not apply. We affirm.

In January 2018, P.W.A. filed a Complaint to Establish Paternity and for Genetic Testing. R.L.T. did not file a response. In August 2018, P.W.A. filed a Custody Complaint. R.L.T. filed a Preliminary Objection, claiming P.W.A. lacked standing because, under the doctrine of presumption of paternity, R.O.T. was Child's father. The trial court held a hearing on the Preliminary Objection.

At the hearing, R.L.T. presented four stipulations: (1) R.L.T. and R.O.T. were married on February 24, 2007; (2) R.L.T. and R.O.T. were still married;

_____
* Retired Senior Judge assigned to the Superior Court.

(3) Child was born in January 2018, (4) and R.L.T. and R.O.T. reside together and live as a family. R.L.T. presented no additional evidence at the hearing.

P.W.A. testified that he began a relationship with R.L.T. on March 17, 2017. He knew she was married, but she said she was going through a divorce. R.L.T. and P.W.A. continued the relationship until sometime after mid-June 2017, when R.L.T. reunited with R.O.T. During their relationship, R.L.T. lived with her mother and, when she did not have her children with her, would stay with P.W.A. About a month after their relationship began, R.L.T. informed P.W.A. that she was pregnant and that he was the father. He went to eight to ten doctor appointments with her. R.L.T. never told P.W.A. she was reuniting with R.O.T. Rather, P.W.A. testified that he and R.L.T. were engaged and that she had told him that "if the attorney would get the paperwork done they'd be[] divorced by now." N.T., 10/30/2018, at 12.

P.W.A. was not at the hospital for Child's birth. After he requested DNA testing, but before the results, R.L.T. brought Child to P.W.A.'s house for "two to three hours a day." *Id.* at 13. He would also visit Child at R.L.T.'s aunt's house, with R.L.T.'s consent. The visitation, where he would see Child a couple times a week, continued until he filed the custody petition.

The trial court concluded the doctrine of presumption of paternity did not apply, and P.W.A. had standing. It further ordered that pending a custody hearing, R.L.T. would have primary custody and P.W.A. would have weekly visitation.

R.O.T. filed a Petition to Intervene, which the trial court granted.

- 2 -

In January 2019, the trial court held a custody hearing. Appellants presented additional evidence in support of their claim that P.W.A. lacked standing due to the doctrine of presumption of paternity.

R.L.T. testified that from the middle of March 2017 to the middle of July 2017 she and R.O.T. were not living together. N.T., 1/4/2019, at 15, 18. At that time she had a relationship with P.W.A. *Id.* at 16. She became pregnant in April 2017. *Id.* at 15. From July 2017 through the date of the custody hearing, R.L.T. and R.O.T. resided together, with their two older children, and, after his birth in January 2018, with Child. *Id.* 18. R.O.T. is listed as the father on the birth certificate. *Id.* R.L.T. also testified that she resided with P.W.A. "for a couple weeks with [her] older two children," but moved back with her parents after one of her children said he did not want to be there. *Id.* at 21. R.L.T. did not have sexual relations with R.O.T. while they were separated. *Id.* at 22. R.L.T. testified that she told P.W.A. that either he or R.O.T. was the father, and that P.W.A. attended five doctor appointments with her. *Id.* at 23.

P.W.A. asked the court to take judicial notice of the divorce proceeding filed by R.O.T. in July 2017, which the court did. *Id.* at 23-24. In the divorce complaint, R.O.T. alleged the marriage was irretrievably broken. A property settlement agreement executed by R.O.T. and R.L.T. was attached to the complaint. The divorce action still was pending at the time of the January 2019 custody hearing. R.L.T. stated the divorce matter was not finalized because she and R.O.T. decided "to make [their] marriage work." *Id.* at 25.

The trial court entered a custody order providing R.L.T. shall have primary legal and physical custody of Child and P.W.A. shall have visitation. Appellants filed a timely Notice of Appeal.

Appellants raise the following issue:

> Whether the trial court abused its discretion in concluding that Appellants did not present with an intact marriage and therefore protected by the doctrine of presumption of paternity[?]

Appellants' Br. at 4 (unnecessary capitalization omitted).

P.W.A. argues that we may consider only the evidence presented at the hearing on the Preliminary Objections. Although Appellants do not explicitly argue that we may consider the evidence as to the presumption entered at the custody hearing, in their brief they rely on the evidence presented at both the hearing on the Preliminary Objection and the custody hearing. We decline to address whether Appellants waived their opportunity to present additional evidence as to the presumption of paternity when they failed to present such evidence at the hearing on the Preliminary Objections. *See In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1289 (Pa.Super. 2011) (finding standing not intertwined with subject matter jurisdiction when statute designates who may sue and finding appellant waived claim that appellee lacked standing where not raised until four years after decree became final); *Kuwait & Gulf Link Transp. Co. v. Doe*, 92 A.3d 41, 45 (Pa.Super. 2014) (party waives issue of standing if not raised at earliest opportunity). Rather, as outlined below, we determine that, even considering the evidence presented at the custody

hearing, the trial court did not abuse its discretion in finding the presumption of paternity did not apply.

We review orders relating to paternity for an abuse of discretion or an error of law. *J.L. v. A.L.*, 205 A.3d 347, 353 (Pa.Super. 2019). "An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order." *Id.* (quoting *Vargo v. Schwartz*, 940 A.2d 459, 462 (Pa.Super. 2007)). We "will not disturb the trial court's findings if they are supported by competent evidence." *Id.* (quoting *Vargo*, 940 A.2d at 462). Courts apply the following analysis to questions of paternity:

> [F]irst, one considers whether the presumption of paternity applies to [the] particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies.

*Vargo*, 940 A.2d at 462 (quoting *Strauser v. Stahr*, 726 A.2d 1052, 1055 (Pa. 1999)) (alterations in original).

The doctrine of presumption of paternity provides that "generally, a child conceived or born during the marriage is presumed to be the child of the marriage[.]" *J.L.*, 205 A.3d at 354 (quoting *Brinkley v. King*, 701 A.2d 176, 180 (Pa. 1997) (op. announcing judgment of ct.)). The presumption "applies only where the underlying policy of the presumption, *i.e.,* to preserve marriages, would be advanced by its application." *Id.*; *accord Vargo*, 940 A.2d at 463 (citing *Brinkley*, 701 A.2d at 181). Therefore, where there is no

"intact family or a marriage to preserve, then the presumption of paternity is not applicable." **Vargo**, 940 A.2d at 463.

The doctrine of paternity by estoppel provides:

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.

**J.L.**, 205 A.3d at 353 (quoting **Freedman v. McCandless**, 654 A.2d 529, 532-33 (Pa. 1995)).

In **B.S. v. T.M.**, we affirmed a trial court's finding that the doctrine of presumption of paternity did not apply. 782 A.2d 1031, 1036-37 (Pa.Super. 2001). In **B.S.**, B.S. had an affair with T.M., and, upon learning she was pregnant, left the marital home she shared with R.S. and looked for a house with T.M. **Id.** at 1032-33. B.S. filed for divorce from R.S. **Id.** T.M. was present for the birth of the child and named as the father on the hospital's acknowledgement of paternity form. **Id.** T.M. added the child to his health insurance and participated in the child's baptism ceremony. **Id.** at 1033. R.S. reunited with B.S. approximately one year after they separated. **Id.** at 1036.

In concluding the court did not abuse its discretion in finding no intact marriage, we noted that for a period of approximately one year, "B.S. acted as if the separation would be permanent and she would be with T.M. indefinitely [and] T.M. undertook the role of father." **Id.** at 1036. We

concluded the trial court correctly found that the presumption should not apply because "the preservation of R.S. and B.S.'s marriage from a paternity dispute would not be advanced by application of the presumption." *Id.* We noted that the trial court relied on the fact that there was no dispute about the identity of the child's biological father. We further noted the trial court's reasoning that "there would be no harm to R.S. and B.S.'s relationship, as this hellish marital situation ha[d] already occurred," and that "[t]he parties in this marriage have already acknowledged the affair and subsequent birth of [the child], the public separation, and B.S.'s holding T.M. out has the father of [the child]." *Id.* at 1037. It found "[t]his marriage will succeed or perhaps fail with or without the application of the presumption." *Id.* Further, the trial court noted that applying the presumption could be harmful to the child—"[i]f R.S.'s biological fatherhood is a fiction, it will not be maintained. If [the child] eventually finds out that the truth is different from what she has been led to believe for a period of years, she may suffer greater trauma than if she knows it from the outset." *Id.* We concluded:

> Cases such as this fall on their unique set of facts. B.S. and R.S. voluntarily gave up the benefit of the presumption for approximately one year after which they claimed the benefits of its existence for the first time. The damage to their marriage is "water under the bridge." R.S. and B.S. reconciled with full knowledge of all the facts. T.M. assumed the responsibilities he believed were his as [the child's] father until he was no longer permitted to do so. At that point, he took immediate steps to assert his rights in court.

*Id.* at 1037.

In **E.W. v. T.S.**, we affirmed a trial court's finding that the presumption of paternity applied. 916 A.2d 1197, 1204 (Pa.Super. 2007). There, while T.S. was married to C.S., she had an affair with E.W. from May 2003 through August 2005. **Id.** at 1199. T.S. gave birth to a child in March 2004. **Id.** She and C.S. continued to reside together, and no divorce proceedings were filed. **Id.** at 1199-1200. C.S. was named as the father on the child's birth certificate. **Id.** at 1200. C.S. was unaware of the affair until August 2005. **Id.** at 1199. Without C.S.'s knowledge, T.S. sometimes took the child to visit with E.W. **Id.** at 1200. T.S. represented to both C.S. and E.W. that they were the biological father of the child. **Id.**

There, we first addressed whether the trial court erred in finding that T.S. and C.S. had an intact marriage. We noted that the trial court as fact finder was to weigh the evidence and assess the witnesses' credibility and found, "[h]aving reviewed the extensive record, . . . the trial court's findings are supported by the evidence presented." **Id.** at 1202. We also addressed E.W.'s claim that the trial court erred in finding the policy underlying the presumption of paternity supported denying him standing. We noted that, unlike in **B.S.**, T.S. did not move from the marital home and no divorce complaint was pending, C.S. fulfilled all duties of a father with connection to birth and religious rites, and C.S. and T.S. did not separate. **Id.** at 1204.

Here, the trial court found the doctrine of presumption of paternity did not apply because R.L.T. was not in an intact marriage. The trial court found "[t]he marriage of R.L.T. and R.O.T. is hardly an intact family considering the

facts before this court." Trial Court Opinion, filed Feb. 7, 2019, at 4 ("1925(a) Op."). The trial court based its determination on the evidence presented at the hearing on the Preliminary Objection, but, in its Rule 1925(a) Opinion also considered evidence from the custody hearing, such as the divorce complaint. The court found:

> P.W.A. was the only witness to testify at the Preliminary Objection proceeding and we found his unrebutted testimony to be credible. Prior to the birth of the child, R.L.T. advised P.W.A. that he was the child's father because she had not been with anyone else, and that she was willing to take a D.N.A. test. Also telling is that after the child was born, R.L.T. permitted visits between P.W.A. and the child, even before paternity testing was requested. Although R.L.T. named her husband as the father on the certificate of birth, her actions and words made it clear that she was well aware that P.W.A. was the father of her child.
>
> Most significant to our determination that this is not an intact family is that R.O.T. filed a divorce action against R.L.T. on July 5, 2017. In the divorce Complaint, R.O.T. alleged that his marriage to R.L.T. was irretrievably broken. Additionally, the parties remain subject to an executed and filed Property Settlement Agreement which outlines the terms of their separation.[2] This divorce action remains pending in this Court.
>
>> [2] The May 18, 2017, executed Property and Separation agreement which is attached to the Divorce Complaint outlines that "diverse unhappy differences, disputes and difficulties have arisen between the parties and it is the intention of Wife and Husband to live separate and apart . . . , and "[t]his Agreement shall remain in full force and [e]ffect . . . unless the parties, in writing signed by both parties, execute a statement declaring this Agreement to be null and void."

**Id.** (citations to record omitted).

To this, we add that R.L.T. testified at the custody hearing that she and R.O.T. were married prior to Child's birth, that they remain married as of the date of the hearing, and that she and R.O.T. live together as a family. Such testimony was consistent with the stipulations at the hearing on the Preliminary Objection. She further testified that she and R.O.T. were separated from March 2017 through July 2017, that she resided with P.W.A. for a period of time, and that she did not have sexual relations with R.O.T. during the separation. R.L.T. also testified that R.O.T. was named on Child's birth certificate and that she and R.O.T. reunited in July 2017, prior to Child's birth.

The trial court concluded that "[t]he clear and convincing evidence in this case dictates that the presumption of paternity cannot be advanced in an effort to preserve a fractured marriage between R.L.T. and R.O.T." 1925(a) Op. at 4. It further found that "the Commonwealth's interest in protecting the family unit should not take precedence over the biological father's paternal rights to his child in this factual circumstance." *Id.* at 4-5.

The trial court's findings are supported by the record, and the court did not abuse its discretion in finding the doctrine did not apply. R.L.T. and R.O.T. did not present with an intact marriage. R.L.T. and R.O.T. were separated from March 2017 through July 2017, and R.O.T. filed a divorce complaint. Although they reunited and currently live together, the divorce action remains pending. Further, application of the doctrine of presumption of paternity in this case would not further the purpose underlying the doctrine. As in *B.S.*,

Appellants have acknowledged the affair and public separation, and have held P.W.A. out as the father of Child by facilitating visitation, and their marriage will "succeed or perhaps fail with or without the application of the presumption." *See B.S.*, 782 A.2d at 1037. Further, as we did in *E.W.*, we defer to the credibility determinations and factual findings of the trial court. 916 A.2d at 1202. Here, the trial court reached a different conclusion than the court in *E.W.*, but its findings are entitled to the same amount of deference. Based on the facts presented to it, the court did not err in finding the doctrine of presumption of paternity did not apply.

Under the test applicable to paternity actions, because we affirmed a finding that the presumption of paternity did not apply, we are next supposed to determine whether estoppel applies. However, we need not do so here, as the parties do not contend that estoppel applies.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/15/2019

- 11 -