J-A21018-22

2022 Pa Super 198

MANDY MICHELLE DEROSA

          v.

WILLIAM JOSEPH GORDON AND
KERRON REGIS, INTERVENER

APPEAL OF: WILLIAM JOSEPH
GORDON

        :   IN THE SUPERIOR COURT OF
        :           PENNSYLVANIA
        :
        :
        :
        :
        :
        :
        :   No. 1121 EDA 2022
        :
        :
        :

Appeal from the Order Entered March 22, 2022
In the Court of Common Pleas of Delaware County
Civil Division at 2018-007523

MANDY MICHELLE DEROSA

          v.

WILLIAM JOSEPH GORDON AND
KERRON REGIS, INTERVENER

APPEAL OF: WILLIAM JOSEPH
GORDON

        :   IN THE SUPERIOR COURT OF
        :           PENNSYLVANIA
        :
        :
        :
        :
        :
        :
        :
        :   No. 1122 EDA 2022
        :
        :

Appeal from the Order Entered March 22, 2022
In the Court of Common Pleas of Delaware County
Civil Division at 2018-007523

J-A21018-22

| | | |
|---|---|---|
| KERRON REGIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MANDY MICHELLE DEROSA AND | : | |
| WILLIAM JOSEPH GORDON | : | |
| | : | No. 1123 EDA 2022 |
| | : | |
| APPEAL OF: WILLIAM JOSEPH | : | |
| GORDON | : | |

Appeal from the Order Entered March 22, 2022
In the Court of Common Pleas of Delaware County
Domestic Relations at 2019-001947

| | | |
|---|---|---|
| KERRON REGIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MANDY MICHELLE DEROSA AND | : | |
| WILLIAM JOSEPH GORDON | : | |
| | : | No. 1124 EDA 2022 |
| | : | |
| APPEAL OF: WILLIAM JOSEPH | : | |
| GORDON | : | |

Appeal from the Order Entered March 22, 2022
In the Court of Common Pleas of Delaware County
Domestic Relations at 2019-001947

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

OPINION BY MURRAY, J.: **FILED NOVEMBER 22, 2022**

In these consolidated appeals, William Joseph Gordon (Husband),

appeals from two related orders granting the request of Kerron Regis

- 2 -

(Appellee), who sought DNA testing in the separate paternity and custody actions involving Husband, Mandy Michelle DeRosa (Mother), and the male child (L.G.), born in August 2016.[1]

The trial court entered the two orders at the paternity and custody dockets. Husband's appeals at 1123 EDA 2022 and 1124 EDA 2022 are from the paternity docket; his appeals at 1121 EDA 2022 and 1122 EDA 2022 are from the custody docket. After careful consideration, we affirm the orders at 1123 EDA 2022 and 1124 EDA 2022 (paternity docket), and quash the duplicative appeals at 1121 EDA 2022 and 1122 EDA 2022 (custody docket).[2]

The trial court summarized the underlying facts as follows:

> L.G. was born to [Mother, while married to Husband]. [Mother] testified that she and [Husband] established a sexually open marriage and were both "swingers" who tolerated each other's sexual encounters with others. L.G., being born biracial[,] was not remarkable to [Husband,] since [Husband] was aware of the ongoing sexual relationship and [M]other's routine sexual intercourse with [Appellee], who is African American. All of the parties appear to have either expressly and/or tacitly acknowledged [Appellee] as a peculiarly special person in L.G.'s life.[2] There has been some testimony that the parties acknowledge [Appellee's] probable paternity of L.G., since they have referred to [Appellee] as the "sperm donor" for L.G.

---

[1] Although interlocutory, an order requiring blood tests to determine paternity is immediately appealable. *Jones v. Trojak*, 634 A.2d 201, 204 (Pa. 1993).

[2] On March 22, 2022, at both dockets, the trial court entered an: (1) order granting Appellee's petition to intervene in the custody action; (2) order granting Appellee's petition for DNA testing to proceed in the paternity action; and (3) order and opinion granting both petitions.

> [2] Testimony presented to the court made it clear that after L.G.'s birth, all three parties were aware L.G. was fathered by [Appellee].

Order, 3/22/22, at 2 (footnote in original).

Appellee testified that he went to the hospital when L.G. was born. N.T., 6/24/19, at 40, 44-45, 52-53. He testified that Husband indicated Appellee was L.G.'s father, and "handed [L.G.] over to me." *Id.* at 53. However, Appellee declined when Husband asked whether Appellee wanted his name on L.G.'s birth certificate. *Id.* at 40, 44-45, 52-53. Appellee stated, "I did not for the simple fact that I thought it would create problems in their marriage [and] their household." *Id.* at 53. Husband is named as the father on L.G.'s birth certificate.

In August 2018, when L.G. turned two, Mother separated from Husband and relocated with L.G.[3] N.T., 1/24/22, at 54. On September 24, 2018, Mother filed for divorce from Husband, and included a custody count in her divorce complaint.[4] On January 2, 2019, Appellee filed a petition to intervene in the custody matter; Husband filed preliminary objections and a new matter in response.

---

[3] Appellee and Mother testified that their sexual relationship ended around July 2018. N.T., 6/24/19, at 33, 65.

[4] The parties' divorce remained pending during the paternity and custody proceedings.

On March 6, 2019, Appellee initiated a paternity action contesting the presumption of Husband's paternity and requesting a DNA test.[5]  Petition to Establish Paternity, 3/6/19, at ¶ 9.  Appellee further requested, if DNA testing established his paternity, that the trial court issue an order designating him as L.G.'s father.  Husband filed preliminary objections, which included a new matter asserting that Appellee's request was barred by the doctrines of presumption of paternity and paternity by estoppel.

The trial court held an evidentiary hearing on June 24, 2019.[6]  Husband testified and presented the testimony of Appellee as on cross.  Mother also testified.  The trial court denied Husband's preliminary objections on October 22, 2019, by two separate orders entered on the custody and paternity dockets.[7]  The trial court scheduled an evidentiary hearing on Appellee's petitions for December 2, 2019.

---

[5] On January 7, 2019, Mother filed a "Petition to Disestablish" Husband's paternity at the Pennsylvania Child Support Enforcement System (PACSES) docket associated with her child support action against Husband.  Husband filed preliminary objections.  Mother's petition is pending.

[6] The notes of testimony are not in the certified record.  However, Husband has included a copy of the notes of testimony in his reproduced record. Because no party disputes their authenticity, we consider the notes of testimony in Husband's reproduced record.  *See Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*) (citing *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012)).

[7] By separate orders on October 21, 2019, filed at both the PACSES and custody dockets, the trial court denied Husband's preliminary objections and/or motion to dismiss Mother's petition to disestablish paternity.

On November 12, 2019, Husband filed an answer and new matter to Appellee's petition to establish paternity. Husband repeated his claims of presumption of paternity and paternity by estoppel. Husband asserted that he and Mother "have held out" L.G. as Husband's child, "and of the marriage since before the minor child's birth." Answer to Petition to Establish Paternity and New Matter, 11/12/19, at ¶ 15. Appellee filed an answer to the new matter on November 21, 2019. The hearing was continued to March 16, 2020. For reasons unspecified in the record, the hearing did not occur.

Appellee filed the next relevant pleading on the paternity docket on February 16, 2021. Appellee repeated his request for DNA testing, and if the testing confirmed Appellee's paternity, an order designating Appellee as L.G.'s father and scheduling a custody trial. Petition to Order DNA Testing, 2/16/21, at ¶¶ 9, 11. Husband filed an answer and new matter on March 1, 2021.

On December 17, 2021, Mother filed an emergency custody petition alleging, *inter alia*, that Husband had sexually abused L.G. during an overnight visit.[8] Emergency Petition, 12/17/21, at ¶¶ 16-21. Mother requested sole legal custody and the suspension of Husband's partial physical custody. Although Appellee's petition to intervene was pending, Appellee filed a

_____

[8] An April 22, 2020 custody order was in effect at the time. Mother and Husband shared legal custody; Mother had primary physical custody; and Husband had partial physical custody every Wednesday and alternating weekends.

response to Mother's emergency petition and requested that the court grant Mother relief. Husband filed a motion seeking to strike Appellee's answer because he was not a party to the custody action. Appellee answered that his petition to intervene

> was filed years ago and never heard by the [c]ourt, yet the [c]ourt, after several *interim* hearings, has repeatedly stated that Intervenor is considered a part of the action. The failure of Intervenor's Petition to Intervene to be heard has been no fault of Intervenor.

Answer to Motion to Strike, 12/21/21, at ¶ 2. Finally, on January 21, 2022, Husband filed an amended answer to the emergency petition, new matter, and motion to strike Appellee's answer.

The court convened a hearing on January 24, 2022. Mother testified, and presented testimony from Appellee, as well as Mother's mother, L.K., and caseworker, Eric Urgiles, who was present when L.G. was interviewed about Mother's allegations of sexual abuse. Husband testified, and presented testimony from his girlfriend, La.Gl. The child, L.G., was five years old and in kindergarten at the time. The trial court interviewed L.G. *in camera*. By order entered January 27, 2022, the court denied Mother's emergency custody petition and directed that Mother and Husband adhere to the April 22, 2020 custody order.

On March 22, 2022, the trial granted Appellee's petition for DNA testing in orders entered on the paternity and custody dockets. The court also granted Appellee's petition to intervene and directed that Appellee "be named

- 7 -

as a party in this custody action." Order, 3/22/22. Finally, by order and opinion entered on the custody and paternity dockets, the court (1) granted Appellee's petition to order DNA testing and petition to intervene; (2) directed the parties to advise the court within ten days whether an additional hearing was required for Mother's petition to disestablish paternity filed on the PACSES docket; and (3) provided "should the court receive no notice from the parties within ten (10) days, a date shall be set for a hearing on" the paternity and custody actions. Order and Opinion, 3/22/22. The court explained:

> [Appellee] contends DNA testing should be ordered to ascertain his paternity of [L.G.] … [Husband] contend[s] the doctrines of presumption of paternity and paternity by estoppel bar such DNA testing to establish [Appellee]'s paternity and his subsequent intervention in the pending custody proceedings pertaining to L.G. After a review of the record, a hearing held on January 24, 2022, and written briefs submitted on behalf of the parties, this [c]ourt finds the arguments against [Appellee]'s intervention in the custody matter and DNA testing unavailing for the reasons set forth hereinbelow. This court shall grant [Appellee]'s intervention and order the requested DNA testing. Depending upon the results thereof, this [c]ourt shall address the paternity suit of [Appellee] and determine whether a modification of custody is in the best interests of the child.

Order and Opinion, 3/22/22, at 3.

On April 21, 2022, Husband timely filed four separate notices of appeal along with concise statements of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.[9]

The trial court filed a Rule 1925(a) opinion on June 9, 2022.

Husband presents the following issues for review:

1.      Did the [t]rial [c]ourt err by granting the request for DNA testing prior to deciding and disposing of the [p]aternity by [e]stoppel claim?

2.      Did the [t]rial [c]ourt err by deciding the [p]aternity by [e]stoppel claim without a hearing on the matter?

3.      Did the [t]rial [c]ourt err by failing to provide notice that the [p]aternity by [e]stoppel claim was being heard?

4.      Did the [t]rial [c]ourt err by failing to analyze the best interest factors when deciding the [p]aternity by [e]stoppel claim?

5.      Did the [t]rial [c]ourt err by deciding the [p]aternity by [e]stoppel claim because the record does not support the decision?

Husband's Brief at 8.[10]

We review the trial court's orders granting paternity testing for an abuse

of discretion. ***Vargo v. Schwartz***, 940 A.2d 459, 462 (Pa. Super. 2007).

An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not

---

[9] As discussed above, Husband's appeals at 1121 EDA 2022 and 1122 EDA 2022 are from two orders entered on the custody docket. Husband's appeals at 1123 EDA 2022 and 1124 EDA 2022 are from the same two orders entered on the paternity docket.

[10] Husband's fourth issue is waived because he fails to address it in the argument section of his brief.

enough [for reversal] that we, if sitting as a trial court, may have made a different finding.

*Id.* (citing *Doran v. Doran*, 820 A.2d 1279, 1282 (Pa. Super. 2003) (citations omitted)). It is well-settled that the trial court, sitting as factfinder, weighs the evidence and assesses credibility. Thus, the court "is free to believe all, part, or none of the evidence[,] and [we, as an appellate court,] will not disturb the credibility determinations of the court below." *Vargo v. Schwartz*, 940 A.2d at 462 (citation omitted).

The legal determination of paternity of a child conceived or born during marriage derives from common law.

> [F]irst, one considers whether the presumption of paternity applies to [the] particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity.

*N.C. v. M.H.,* 923 A.2d 499, 502–03 (Pa. Super. 2007) (quoting *Brinkley v. King*, 701 A.2d 176, 180 (Pa. 1997) (plurality opinion)).

The presumption of paternity is inapplicable when there is no longer an intact marriage to preserve. *Fish v. Behers*, 741 A.2d 721, 723 (Pa. 1999). Instantly, Husband does not claim error or abuse of discretion with the trial court's determination that the presumption of paternity does not apply. The record supports the court's finding that Husband and Mother were "in the midst of divorce and related custody and support proceedings. [Mother]'s and [Husband]'s marriage is no longer an intact marriage." Order and Opinion,

- 10 -

3/22/22, at 3 (citation omitted). Even if the presumption applied, we would agree with the trial court that the presumption was rebutted because "the parties participated in an open marriage and no question exists that [Child] is of multiracial ethnicity[, while Mother and Husband are] Caucasian[.]" *Id.* at 5.

The trial court also considered whether Appellee was estopped from claiming paternity. The Pennsylvania Supreme Court has held that "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child." *K.E.M. v. P.C.S.*, 38 A.3d 798, 810 (Pa. 2012). The Court has explained:

> Estoppel in paternity is merely the legal determination that because of a person's conduct (*e.g.*, holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.

*Fish*, 741 A.2d at 723 (citing *Freedman v. McCandless*, 654 A.2d 529, 532–533 (Pa. 1995)).

The doctrine of paternity by estoppel "is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being

told that the father he has known all his life is not in fact his father." *Fish*, 741 A.2d at 724 (citing *Brinkley*, 701 A.2d at 180).

Here, the trial court was tasked with deciding whether Appellee's conduct estopped Appellee from claiming paternity. *See C.T.D. v. N.E.E. and M.C.E.*, 653 A.2d 28, 31 (Pa. Super. 1995) (holding putative father's failure to act during child's first two years of life "may have effectively estopped him from now raising his claim of paternity.").

Husband first contends the trial court erred by not disposing of the estoppel issue prior to granting Appellee's request for DNA testing. Husband's Brief at 22-23 (citing *Jones v. Trojak*, 634 A.2d 201, 206 (Pa. 1993) ("before an order for a blood test is appropriate to determine paternity, the actual relationship of the presumptive father and natural mother must be determined.")). We agree that "where the [estoppel] principle is operative, blood tests may be irrelevant, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted." *Fish*, 741 A.2d at 724 (citation omitted). However, contrary to Husband's contention, the trial court addressed Husband's claim that paternity by estoppel "prevents the [c]ourt from proceeding with … DNA testing." Order and Opinion, 3/22/22, at 4.

The court found the doctrine inapplicable, stating:

This case does not involve the situation where the likely biological father, [Appellee], has not been involved in L.G.'s life. Also, this [c]ourt finds that [Appellant] (and [Mother]) did not hold [Husband] out, to the exclusion of [Appellee], as the only father

- 12 -

> of L.G. It appears, to the contrary, that [**Mother] embraced and acknowledged the fact that [Appellee] was [Child]'s biological father**. Therefore, the history of the behavior of the parties involved here all point to a likelihood that [Appellee] is the biological father of L.G.

*Id.* at 4-5 (emphasis added).

In the alternative, Husband argues in his second and third issues that the trial court violated his right to due process under the Fourteenth Amendment to the United States Constitution by deciding the estoppel issue without a separate hearing and/or proper notice. Husband's Brief at 28-33. Husband claims the January 24, 2022, hearing related only to Mother's emergency custody petition and not paternity. Husband thus asserts he was deprived of the opportunity to develop a record regarding his paternity by estoppel claim. Husband relies on *K.E.M.*, 38 A.3d at 810, where the Pennsylvania Supreme Court stated, "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown on a developed record that it is in the best interests of the involved child." We are not persuaded by Husband's argument.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted). "Procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Garr v.*

*Peters*, 773 A.2d 183, 191 (Pa. Super. 2001) (citation omitted). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A.*, 683 A.2d 297, 300 (Pa. Super. 1996) (citation omitted).

Referencing the record, the trial court observed that the "facts surrounding the issues of estoppel and presumption of paternity were addressed" in multiple pleadings and proceedings, including the June 24, 2019, evidentiary hearing on Husband's preliminary objections. Trial Court Opinion, 6/9/22, at 14. The court granted Appellee's request for DNA testing "following considerable review." *Id.* Further, the court observed that Pa.R.C.P. 1910.15(c) does not require a hearing "for the sole purpose of determining paternity by estoppel."[11] *Id.* The court also recognized its obligation under Pa.R.C.P. 1910.15(c) to "dispose promptly of the issue." *Id.* The court reasoned that it could resolve the estoppel and presumption of paternity issues from the existing record without further delay. *Id.*

---

[11] The Rule provides:

> **(c) Estoppel and Presumption of Paternity.** If either party or the court raises the issue of estoppel or the issue of whether the presumption of paternity is applicable, the court shall dispose promptly of the issue and may stay the order for genetic testing until the issue is resolved.

Pa.R.C.P. 1910.15(c).

Our review confirms the parties provided extensive evidence regarding the estoppel issue and L.G.'s best interests, most notably at the June 24, 2019, and the January 24, 2022, hearings. Appellee, Husband, and Mother testified at both hearings. During the latter hearing, the court interviewed L.G. *in camera*. Accordingly, the record belies Husband's claim that he was deprived of the opportunity to develop a record regarding his estoppel defense in contravention of his right to due process.

Husband also argues the trial court erred in finding Appellee's paternity claim was not barred by the doctrine of paternity by estoppel. Husband's Brief at 34-42. Contrary to Husband's assertion, the trial court explained:

> [Appellee] spent regular time with L.G., alternating weekends on Sundays[, and] spending between two (2) and seven (7) hours with him. L.G. even calls [Appellee] by a special name, that is, "Chubby." Credible testimony established that [Appellee] has visited with L.G. on average twice weekly since L.G.'s birth. L.G. has also grown to know [Appellee's] children from separate relationships, [such] as his half-sibling[,] who is approximately the same age as L.G.
>
> It does not appear [Mother] objected to or took any steps to block or prevent [Appellee] from being in L.G.'s life. In fact, it appears to this [c]ourt that [Mother] has, by her prior actions, essentially conceded that it is in L.G.'s best interests to have [Appellee] in his life. It would appear almost unnatural to suddenly have [Appellee] removed from L.G.'s nurturing and development since [Mother] has acquiesced, if not encouraged, [Appellee's] involvement in L.G.'s life.
>
> [Mother] testified that [Appellee] continues to be a regular part of L.G.'s life and visits L.G. during *her* scheduled custody or visitation with L.G. [Appellee] has and continues to also spend time with L.G. and L.G.'s half-sister. The interview with L.G., at this stage, revealed he calls or variously thinks of both [Husband] and [Appellee] as father-figures. It is plain to this court [Appellee] is

- 15 -

well known to L.G. and no stranger to the child. Further, it is clear to this [c]ourt that all parties believe [Appellee] is the biological father of L.G.

Trial Court Opinion, 3/22/22, at 2-3 (emphasis in original).

The record supports the trial court's findings. Appellee testified that during the two years from L.G.'s birth to Mother's and Husband's separation, Appellee saw L.G. "a couple times a week." N.T., 6/24/19, at 29. Appellee testified that the parties encouraged L.G. to refer to him as "Chubby." *Id.* at 30. Appellee explained he visited L.G. at Mother's and Husband's home, or Mother brought L.G. to Appellee's place of employment. *Id.* at 29-30. Mother testified that before she separated from Husband, "things got more tense within the home," and Appellee became "more uncomfortable, so he didn't come over quite as often, but I would go to him more often. I would take L.G. up to his job." *Id.* at 84-85.

After Mother and L.G. moved from the marital home, Appellee visited L.G. on Tuesdays and Thursdays. *Id.* at 85. Appellee also testified that Mother would bring L.G. to his house on Sundays, when L.G. would spend time with Appellee's daughter, who was approximately four months younger than L.G. *Id.* at 30-31, 34. The parties do not dispute the relationship between L.G. and his half-sister. *Id.* at 48, 57.

Appellee testified that he most recently saw L.G. during Mother's custodial weekends. N.T., 1/24/22, at 120. Mother testified she permits Appellee to have custody of L.G. on her custodial Sundays, usually between

noon and 5:00 p.m. *Id.* at 56-57. Mother also testified to her belief that Appellee is L.G.'s biological father, and described her relationship with Appellee as "amicable." *Id.* at 56. Appellee testified he has no doubt L.G. is his son. N.T., 6/24/19, at 51. Appellee referenced L.G.'s physical appearance, stating, "I mean, it speaks for itself." *Id.* Appellee testified that L.G. refers to him as "Chubby or, if my daughter is around, only when she's around[,] he will refer to me as dad or daddy." N.T., 1/24/22, at 120.

During his *in camera* interview, L.G. referred to Husband as "Smokey" and Appellee as "Chubby." *Id.* at 179, 181-182. L.G. testified, "I only got one dad," and identified "Smokey." *Id.* at 170. L.G. responded to the following questions from the trial court:

> Q. [W]ould you be okay if you went and started spending some time with Smokey again?
>
> A. Um-hum.
>
> Q. And will you be okay with spending time with Chubby?
>
> A. Um-hum.
>
> Q. And will you be okay with spending time with mommy?
>
> A. Um-hum.

*Id.* at 185.

Consistent with the foregoing, the trial did not err in determining paternity by estoppel was not applicable in this case, as it would be "almost unnatural to suddenly have [Appellee] removed from L.G.'s nurturing and development[.]" Trial Court Opinion, 3/22/22, at 2 (unpaginated).

Accordingly, we affirm the orders granting DNA testing on the paternity docket, and quash as duplicative the appeals from the custody docket.

Orders at 1123 EDA 2022 and 1124 EDA 2022 affirmed. Appeals at 1121 EDA 2022 and 1122 EDA 2022 quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2022