J-S03008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN M. LYONS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DANIELLE C. ARPIN AND MICHAEL | : | No. 845 WDA 2024 |
| ARPIN | : | |

Appeal from the Order Entered June 18, 2024
In the Court of Common Pleas of Crawford County Domestic Relations at
No(s): DR2024-00025,
PACSES ID: 180302571

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: MARCH 20, 2025**

John Lyons appeals from the order denying his request for genetic testing to establish paternity of the child, S.A. He argues that: the trial court erred in applying the presumption of paternity and determining that it was irrebuttable, and that the presumption of paternity violates equal protection laws and is against public policy. Upon review, we affirm.

Danielle Arpin ("Mother") and Michael Arpin ("Husband") married in 2008. They had three children together. Thereafter, in 2017, Husband had a vasectomy, which was not reversed or tested for effectiveness.

In November 2021, Mother began having an affair with Lyons. They had intercourse and did not use birth control.

In April 2022, while Mother was still involved with Lyons, Mother and Husband separated; Mother moved into her own place. Nonetheless, Husband

and Mother kept in daily contact and lived near each other. However, they did not have intercourse while separated.

During Mother and Husband's separation, Mother became pregnant; she discovered this in April or May 2023.

Mother's relationship with Lyons ended in October 2023. In November 2023, Mother and Husband reconciled, and Mother returned to live with Husband. Since that time, they have stayed together, intend to remain as such, and keep the family together.

On January 21, 2024, S.A. was born. Lyons was not at S.A.'s birth, and he has had no contact with him.

From the time of S.A.'s birth, Husband has held himself out as the father and provided day to day care for him and intends to do so into the future. The three other children have bonded with S.A. Mother and Husband are raising the four children together. Having Lyons involved with S.A. would be detrimental to their family and marriage.

On January 31, 2024, just ten days after S.A. was born, Lyons filed a petition to disestablish paternity by presumption and asked the trial court to order genetic testing. The trial court held a brief hearing on March 5, 2024. The court held a second hearing on April 22, 2024, to allow the parties an opportunity to more fully develop their cases and for the court to receive additional evidence needed to rule on the matter. Notably, Lyons did not challenge the status of Mother and Husband's marriage. Rather, he presented evidence that Mother and Husband did not have intercourse while separated

and that Husband had a vasectomy years earlier making him sterile to rebut/overcome the presumption of paternity in Husband.

Based upon the testimony presented, the trial court found that Mother and Husband had an intact marriage at the time of the paternity proceedings. Additionally, Mother and Husband, along with the four children, were living together as a family unit. Therefore, the court concluded that because Mother and Husband had an intact marriage and functioned as a family unit, the presumption of paternity applied and was irrebuttable, despite any evidence of lack of access or sterility. Not applying the presumption would negatively impact the family. Consequently, the trial court denied Lyons' petition.

Lyons filed this timely appeal. He and the trial court complied with Appellate Rule 1925.[1]

Lyons raises the following five issues for our consideration which we have reordered for ease of disposition:

1. Does the impossibility of a husband, in an intact marriage into which a child is born, being the biological father of a child because he did not procreate with the wife of that intact marriage during the period of possible conception create an exception to the presumption of paternity which thereby allows a third party to challenge paternity, thereby rendering the trial court's order erroneous?

2. Does the sterility of a husband due to vasectomy, in an intact marriage into which a child is born, during the period of

_____

[1] Initially, Lyons did not file timely a Rule 1925(b) statement as ordered by the trial court. However, following this Court's issuance of a rule to show cause why his appeal should not be quashed, we concluded that there was a breakdown in court operations which precluded Lyons from complying and gave him additional time to file his statement. Lyons complied.

possible conception, create an exception to the presumption of paternity which thereby allows a third party to challenge paternity, thereby rendering the trial court's order erroneous?

3. Does the equal protection of the 14th Amendment to the U.S. Constitution grant rights of paternity to a third party man, including the right to challenge paternity and to custody if paternity is proven in the third party, if a child is born into an intact marriage between a husband and wife but the third party is a putative biological father, thereby rendering the trial court's order erroneous?

4. Does the 28th Right of the Pennsylvania Constitution grant rights of paternity to a third party man, including the right to challenge paternity and to custody if paternity is proven in the third party, if a child is born into an intact marriage between a husband and wife but the third party is a putative biological father, thereby rendering the trial court's order erroneous?

5. Does contemporary public policy require the termination of the court-created presumption of paternity in the husband of an intact marriage into which a child is born, thereby rendering the trial court's order erroneous?

*See* Lyons' Brief at 2-4 (excess capitalization omitted).

We review orders directing or denying genetic testing for an abuse of discretion. *See Barr v. Bartolo,* 927 A.2d 635, 639 (Pa. Super. 2007). "For our purposes, an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Id.* (citations omitted); *see also K.E.M. v. P.C.S.*, 38 A.3d 798, 803 (Pa. 2012). Additionally, "it is well-settled that the trial court, sitting as factfinder, weighs the evidence and assesses credibility. Thus, the court 'is free to believe all, part, or none of the evidence, and we, as an appellate court, will not disturb the credibility determinations of the court

- 4 -

below.'" ***DeRosa v. Gordon***, 286 A.3d 321, (Pa. Super. 2022) (citing ***Vargo Schwartz***, 940 A.2d 459, 462 (Pa. Super. 2007) (brackets omitted)).

In his first and second issues, Lyons claims that the trial court erred when it applied the presumption of paternity in this case. Specifically, Lyons argues that he presented evidence to overcome the presumption of paternity. First, he maintains that it was impossible for Husband to be the biological father of S.A. because he did not have sex with (or lacked access) to Mother during their separation when S.A. was conceived. Lyons' Brief at 15. He further maintains that Husband had a vasectomy, resulting in sterility, and therefore was unable to procreate. ***Id.*** at 17. According to Lyons, the rule that this evidence, which traditionally could be used to rebut the presumption of paternity, still applies to overcome the presumption and render its "irrebuttable" nature inapplicable. ***Id.*** Therefore, according to Lyons, the presumption does not apply in this case, and he is entitled to challenge Husband's paternity. ***Id.*** at 16-17.

Based on our precedent, we must disagree.

The legal determination of paternity of a child conceived or born during marriage derives from common law. The presumption of paternity is one of "the great fictions of the law of paternity: the presumption of paternity embodies the fiction that regardless of biology, the married people to whom

- 5 -

the child was born are the parents[.]"[2] **Brinkley v. King**, 701 A.2d 176, 180 (Pa. 1997) (plurality). It is also one of the strongest presumptions known to the law. **John M. v. Paula T.,** 571 A.2d 1380, 1383 (Pa. 1990), *cert. denied,* 498 U.S. 850 (1990).

Traditionally, the presumption of paternity could be rebutted only by proof that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception. **Jones v. Trojak**, 634 A.2d 201, 206 (Pa. 1993); **John M.,** 571 A.2d at 1384. Thus, where the presumption applied, blood test results (existing or potential) were irrelevant unless and until the presumption was overcome. **Jones**, 634 A.2d at 206.

However, in certain circumstances, the presumption of paternity is irrebuttable and cannot be overcome even with evidence of non-access, sterility, or blood tests. Where a party outside the marriage/third party challenges the paternity of a husband in an intact marriage, the presumption is irrebuttable. This principle, which changed the traditional rule, is based upon our Supreme Court's 1990 decision in **John M.**

In **John M.**, a party outside the marriage/third party (putative father) filed a petition for partial custody/visitation and sought to establish that he was the biological father of a child born during the marriage of mother and

---

[2] The doctrine of estoppel also has been deemed one of the "great fictions of the law of paternity" which "embodies the fiction that, regardless of biology, in the absence of a marriage, the person who has cared for the child is the parent." **Brinkley v. King**, 701 A.2d 176, 180 (Pa. 1997) (plurality).

husband. Putative father asked the trial court to compel the husband to submit to blood testing under the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S.A. §§ 6131-37. The trial court denied his motion, and this Court reversed. Mother and husband appealed.

Our Supreme Court reversed, concluding that the Act only provided for testing of the mother, child, and the putative father; it does not allow for testing of the husband. The Court explained that "paternity had already been established by the presumption that the [c]hild is the child of the marriage . . . ." and putative father did not offer any evidence to overcome the presumption. The Court noted that the Commonwealth had substantial interests in preserving the presumption. Therefore, the trial court correctly concluded there was no good cause to require husband to submit to a blood test to "establish" paternity. *Id.* at 1388.

Significantly, the Chief Justice wrote a concurring opinion, in which all the justices joined. He stated:

> I write separately to emphasize that this Court has not swayed from the presumption that a child born to a married couple is presumed to be a "child of the marriage."
>
> ***
>
> [I]t should remain clear that a child born to a married couple will be presumed to be the issue of the husband. That presumption can be overcome only by proof of facts establishing non-access or impotency. *Cairgle v. American Radiator and Standard Sanitary Corp.,* 77 A.2d 439 (Pa. 1951).
>
> ***
>
> In this case *a third party disputes the paternity of the husband* and asks the court to compel the presumed father to

submit to a blood test in order to determine who is more likely the father. The lower court properly denied the request, relying upon the "presumption of legitimacy". However, the Superior Court found that [the Act] relaxed the presumption, therefore enabling the alleged putative father to establish "good cause" to compel a blood test of the husband under Pa.R.Civ.P. 4010(a).

The Superior Court erred for the presumption is absolute. The Act does not relax the presumption that a child born to a marriage is a "child of the marriage"; it merely provides a mechanism through which an *alleged* [putative] father can accumulate evidence of paternity. This Act cannot be used by a third party, seeking to rebut the presumption, to compel a *presumed* father to submit to a blood test*. **Whatever interests the putative father may claim, they pale in comparison to the overriding interests of the presumed father, the marital institution and the interests of this Commonwealth in the family unit.** These interests are the cornerstone of the age-old presumption and remain protected by the Commonwealth today.

***Thus a third party who stands outside the marital relationship should not be allowed, for any purpose, to challenge the husband's claim of parentage. I believe the presumption in this situation is irrebuttable and conclusive,*** the statutory provision cited in the majority opinion notwithstanding. The thrust of the presumption is to establish [husband] as the legally recognized father of the child in question, ***without regard to the legitimacy of its biological premise***.

***John M.*** at 1388–89 (Nix, J., concurring) (emphasis added) (parallel citations omitted).

Two years later, a panel of this Court subsequently applied ***John M.*** and explained the effect of its concurrence. In ***Coco v. Vandergrift***, 611 A.2d 299 (Pa. Super. 1992), putative father filed a complaint seeking custody of mother's daughter, claiming he was her father. Putative father acknowledged in the complaint that daughter was born during mother's marriage to husband, but the child was conceived during a period when husband and mother did not

have intercourse. Putative father also maintained that he developed a relationship with daughter and claimed that blood tests would establish that he, not husband, was the father. Mother and husband filed preliminary objections in the nature of a demurrer claiming that daughter was born during the marriage, they held her out as a child of the marriage, and there was no allegation of sterility or non-access. The trial court sustained their preliminary objections and dismissed the complaint.

On appeal to this Court, putative father argued the trial court erred in concluding that his complaint was insufficient to overcome the presumption of paternity; he alleged that husband lacked access to mother, *i.e*, one of the circumstances traditionally used to overcome the presumption. In affirming the trial court's dismissal of the complaint, this Court concluded, based on the unanimous concurrence in **John M.**, that husband's claim of paternity as against a third party was irrebuttable where mother, husband, and child lived together as a family. *Id*. at 301. We noted that, even though the concurrence in **John M.** may be *dicta*, it clearly expressed the Court's opinion on such matter. *Id.* As a result, we concluded, under the circumstances in **Coco**, that the presumption that the child was husband's was irrebuttable, and that a hearing on the issue of non-access or impotency would be unnecessary. *Id*. *See also Miscovich v. Miscovich*, 688 A.2d 726 (Pa. Super. 1997) (explaining that the presumption is irrefutable where the mother, child and husband live together as an intact family, with the husband assuming

responsibility despite a third party's claims of sterility or non-access), *affirmed,* 720 A.2d 764 (Pa. 1998).

Our Supreme Court subsequently incorporated the principle from ***John M.*** into its fundamental rules for presumptive paternity. In the seminal case of ***Brinkley v. King***, 701 A.2d 176 (Pa. 1997) (plurality), mother became pregnant during her marriage to husband. Upon learning of mother's infidelity, husband separated from her before the child was born. After the child was born, putative father visited mother and daughter for two years, until mother filed a complaint for support. At the time, mother and husband were divorced. To defend against mother's claim, putative father argued that the presumption of paternity applied because the child was born during the marriage. Mother sought to establish paternity. Despite mother's testimony that she did not have intercourse with husband when the child was conceived, but did with putative father, the trial court denied mother's petition for testing because she failed to overcome the presumption that husband was the father. This Court affirmed.

In considering mother's appeal, the High Court set forth the fundamentals of the law of presumptive paternity as follows:

> [G]enerally, a child conceived or born during the marriage is presumed to be the child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access to the mother or the presumptive father was physically incapable of procreation at the time of conception. ***However, the presumption is irrebuttable when a third party seeks to assert his own***

> ***paternity as against the husband in an intact marriage***.
> ***John M.***, 571 A.2d at 1388–89.

***Id.*** at 179 (emphasis added) (parallel citation omitted); ***see Freedman v. McCandless***, 654 A.2d 529 (Pa. 1995) (explaining that where mother and husband live together and are raising the child as a family unit, the presumption of husband's paternity is absolute and cannot be challenged by a third party). The Court further stated:

> [t]he public policy in support of the presumption of paternity is the concern that marriages which function as family units should not be destroyed by disputes over the parentage of children conceived or born during the marriage. Third parties should not be allowed to attack the integrity of a functioning marital unit, and members of that unit should not be allowed to deny their identities as parents.

***Id.*** at 180 (citing ***John M.***, ***supra***) (emphasis added). The "interests of the presumed father, the marital institution and the interests of this Commonwealth in the family unit," are paramount. ***Id.*** n. 7.

Recognizing the changing times and prevalence of divorce, the Court further observed, "it is considerably less apparent that application of the presumption to all cases in which the child was conceived or born during marriage is fair." ***Id.*** at 181. As a result, the Court held that the presumption of paternity applies where "the policies which underlie the presumption, would be advanced by its application, and in other cases, it does not apply." ***Id.*** Because husband and mother in ***Brinkley*** were no longer married when mother filed her complaint, the presumption of paternity did not apply. ***Id.***

Thereafter, in **Strauser v. Stahr**, 726 A.2d 1052 (Pa. 1999), the High

Court reiterated the irrebuttable nature of the presumption of paternity as

articulated in **John M.** The Court stated:

Traditionally, the presumption can be rebutted only by proof either that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception. Thus, it has been held that, where the presumption applies, blood test results (existing or potential) are irrelevant unless and until the presumption has been overcome. It has also been held that, **in one particular situation, no amount of evidence can overcome the presumption: where the family (mother, child, and husband/presumptive father) remains intact at the time that the husband's paternity is challenged, the presumption is irrebuttable**. **Freedman**, 654 A.2d at 533; **Coco v. Vandergrift**, 611 A.2d 299, 301 (1992).

**Id.** at 1054 (some citations omitted). The Court then indicated, "[t]his is such

a case[]," and proceeded to apply this principle to the facts in **Strauser**.

There, putative father filed a custody complaint against mother claiming

he was the father of the child born to mother during her marriage with

husband. Putative father, mother, and child voluntarily submitted to blood

tests which indicated that it was 99.99% probable that putative father was

the child's father. After receiving these results, mother prohibited putative

father from seeing the child, which she had previously allowed. Mother and

husband filed preliminary objections to dismiss the custody complaint arguing

the presumption of paternity applied. Based upon admission of the blood tests

into evidence, the trial court concluded that the presumption had been

overcome and ordered that a hearing be held to determine the best interests

of the child. Mother and husband appealed. This Court reversed concluding that, because the family remained intact and husband assumed parental responsibility for the child, despite the results of the blood tests, the presumption of paternity was irrebuttable. Putative father appealed.

The Supreme Court affirmed. The Court first held that the presumption of paternity applied as the case fell within the limited circumstances identified in **Brinkley**, *i.e.*, where the family remains intact. It further held that the presumption was irrebuttable. ***Id.*** at 1055-56.

These cases conclusively established that, where a party outside the marriage/third party challenges a husband's paternity, and an intact marriage exists when paternity is challenged, the presumption of paternity applies and is irrebuttable. No amount of evidence, or type of evidence, even that which traditionally has been offered to rebut the presumption of paternity, can overcome it. Applying this principle in the instant case, which we must, we conclude that the trial court did not err when it denied Lyons' petition.

Here, as the trial court found, the evidence demonstrated that Mother and Husband have an intact marriage, prior to and during these proceedings, and that they are living as a family. Therefore, the presumption of paternity applied. Further, the presumption under the circumstances of the instant case was irrebuttable. Although there was testimony that Husband did not have intercourse with Mother while they were separated, when conception occurred, and that Husband had a vasectomy, this evidence could not be used to overcome the presumption of paternity. Our precedent indicates that this

evidence may be considered to rebut the presumption in other circumstances, for example, where a party outside the marriage/third party seeks to disprove a husband's paternity and his marriage to the mother is not intact.

Lyons argues, however, that evidence of non-access or a husband's sterility still can rebut the presumption of paternity, even where an intact marriage exists. In support, he relies on the Supreme Court's recent decision in **B.C. v. C.P.**, 310 A.3d 721 (Pa. 2024). Lyons' Brief at 14, 17. Specifically, he references the following excerpt in support of his position:

> Traditionally, the presumption of paternity could only be overcome by clear and convincing evidence establish that the husband did not have access to his wife during the period of possible conception, or that the husband was impotent or sterile. "***The presumption has been held to be otherwise irrebuttable*** when a third party seeks to assert his own paternity as against the husband in an intact marriage.

**B.C.**, 310 A.3d at 729-731 (emphasis added). Lyons interprets this statement to mean that such evidence renders the presumption of paternity's irrebuttable nature inapplicable. Lyons' Brief at 14, 17. We disagree.

First, this interpretation contradicts the precedent discussed above. Moreover, later in its opinion, the Court more clearly articulated the rule stating, "this court's decisions, however, have held steadfast that there is a single circumstance under which the presumption of paternity continues to apply, and, indeed is irrebuttable—where there is an intact marriage to preserve." **Id.** at 735. Additionally, we note that the term "otherwise" means

- 14 -

"under other circumstances."  Thus, we interpret the Court's prior statement to mean:

> The presumption of paternity is unrebuttable when, at the time the husband's paternity is challenged, mother, her husband, and the child comprise an intact family wherein the husband has assumed parental responsibilities for the child.  Under other circumstances, the presumption may be overcome by clear and convincing evidence that either of the following circumstances was true at the time of conception: the presumptive father, i.e., the husband, was physically incapable of procreation because of impotency or sterility, or the presumptive father had no access to his wife . . .

***Vargo***, 940 A.2d at 463.  Lyons' first and second issues afford him no relief.

In his third and fourth issues, Lyons claims that the presumption of paternity violated the equal protection provisions of the 14th Amendment of the United States Constitution and the 28th Right of the Pennsylvania Constitution.  Specifically, Lyons argues that the law in Pennsylvania governing paternity discriminates against men, as women have complete authority over "their genetic progeny" but men do not.  Lyons' Brief at 20.  He further argues that a woman after birth of a child has a broad, nearly unfettered right to demand paternity testing; on the other hand, a man does not have the same right, and the presumption of paternity prevents men from asserting their rights of paternity based on reasons that are no longer representative of our society.  Lyons' Brief at 20-21.

Although these issues were preserved below, upon review, we observe that Lyons' brief regarding these issues does not comply with our appellate

rules.[3]  Specifically, he does not present a detailed **legal** argument with citation to relevant authority.  Most critically, he provides no meaningful discussion of the issues or legal analysis to persuade this Court that his equal protection claims have merit.  **See** Pa.R.A.P. 2119(a)-(b).  Rather, he merely makes broad claims as to why the current state of Pennsylvania's paternity law is discriminatory towards men.  Where "a deficient brief hinders this Court's ability to address any issue on review, the issue will be regarded as waived."  **Gould v. Wagner**, 316 A.3d 634, 639 (Pa. Super. 2024) (citations omitted).  Accordingly, we conclude that Lyons waived his third and fourth issues.

In his fifth and final issue, Lyons asks this Court to end the presumption of paternity as it currently exists.  Specifically, he argues that the original purpose for the presumption no longer exists as our society has significantly changed.  Lyons' Brief at 12-13.  According to Lyons, the presumption of paternity "is unjust and incompatible with the current dominant culture in the United States and, specifically, Pennsylvania."  **Id.** at 13-14.  Therefore, Lyons contends that he should be able to contest husband's paternity.  **Id.** at 14.

In **B.C.**, our Supreme Court stated:

In closing, we reiterate that this appeal does not present the issue of whether the presumption of paternity has outlived its usefulness in light of contemporary standards.  **Unless or until this Court abrogates the presumption of paternity in a case where that issue is preserved and fully developed,** courts in this Commonwealth shall apply the presumption of paternity in

---

[3] The trial court did not specifically address these issues in its 1925(a) opinion.

- 16 -

the limited circumstances where its purpose to preserve marriage is advanced.

***B.C.***, 310 A.3d at 737 (emphasis added). Recently, another panel of this Court, when asked to reconsider the public policy behind the presumption of paternity, aptly explained:

> [O]ur Supreme Court has instructed us to continue to apply the presumption in cases where a marriage is intact, unless or until the Supreme Court of Pennsylvania abrogates the presumption. ***See id.*** Although [appellant] advances a compelling argument for a change in our law, as an error-correcting court, we are simply unable to give him the relief he seeks. ***See Matter of M.P.***, 204 A.3d 976, 986 (Pa. Super. 2019) (explaining this Court is bound by decisional and statutory legal authority, even when equitable considerations may compel contrary result; "We underscore our role as an intermediate appellate court, recognizing that the Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania").

***Sitler v. Jones***, 312 A.3d 334, 340–41 (Pa. Super. 2024), *appeal granted*, 318 A.3d 758 (Pa. 2024). Likewise, we must decline to consider Lyons' fifth issue. This policy is better left for our Supreme Court or the Pennsylvania Legislature.

Accordingly, we affirm the trial court's order denying Lyons' petition to establish paternity of the child, S.A.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/20/25