J-A02018-24

2024 PA Super 38

STEVEN M. SITLER                    :    IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                 Appellant          :
                                    :
          v.                        :
                                    :
ALEXAS JONES                        :
                                    :
                 Appellee           :    No. 1402 MDA 2023

Appeal from the Order Entered September 11, 2023
In the Court of Common Pleas of Columbia County
Civil Division at No(s):  2023-MV-22-MV

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

OPINION BY KING, J.:                        **FILED: MARCH 5, 2024**

Appellant, Steven M. Sitler, appeals from the order entered in the Columbia County Court of Common Pleas, denying his petition against Appellee, Alexas Jones, to establish paternity and for genetic testing of Appellee's child, R.G.J. (born in May 2023) ("Child").[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

---

[1] We use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken."  Pa.R.A.P. 904(b)(1). Notably, "upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child."  Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a). Neither party has applied to this Court for the use of initials in the caption. Nevertheless, we will refer to the minor child as "Child" to protect Child's identity.

[Appellee] had sexual relations with [B.J. ("Appellee's husband")] and [Appellant] near the time of conception of Child. No one has performed DNA testing upon Child and [Appellee's h]usband (or [Appellant] for that matter) to determine biological paternity. [Appellant filed a complaint to establish paternity and for genetic testing on July 5, 2023.] A hearing on the Complaint was held on August 21, 2023.

[Appellee] married [her husband] on March 25, 2022. [Appellee] and [Appellee's h]usband have an elder child, L.J., born [in] January…2021. Both [Appellee] and [Appellee's h]usband testified that their marriage is intact. They have never separated and continue to live together with Child and L.J. as a family unit. [Appellee's h]usband is designated on Child's birth certificate as Child's father. Emotional bonding has occurred between [Appellee's h]usband and Child. [Appellee's h]usband works first shift and cares for Child during [Appellee's] work during third shift, doing all that is necessary such as feeding, changing and bathing. [Appellee] and [Appellee's h]usband hold [Appellee's h]usband out to "everybody" as the father of Child, including family, co-workers and friends. [Appellee's h]usband testified that he will love and care for Child as his own regardless of the identity of the biological father of Child.

[Appellant] has never seen Child and has no relationship with Child. In October of 2022, after [Appellant] was advised by [Appellee] that she was pregnant and that the then unborn child might be his, [Appellant] told [Appellee] that [Appellant] "wanted nothing to do" with the then unborn child. One week later, [Appellant] inquired again and said he did want to have a relationship with the then unborn child. [Appellant] filed a custody action on May 17, 2023, …[shortly] after Child was born.

For a time, [Appellee] talked as if [Appellant] was the biological father of Child, verbally and in text messages. Despite this, [the court] found as fact that [Appellee] had sexual relations with both [Appellee's h]usband and [Appellant] near the time of conception and that no test result has been obtained which determines inclusion or exclusion of either [Appellee's h]usband or [Appellant] as

> the biological father of Child. Therefore, [Appellee's] talk in this regard was based only on supposition.

(Trial Court Opinion, filed 9/11/23, at 1-2; R.R. at 5a-6a).

Following a hearing, the court denied Appellant relief on September 11, 2023. The court decided that the presumption of paternity applied in this case because Appellee's marriage to her husband was intact. (***See id.*** at 4; R.R. at 8a). Moreover, the court held that paternity by estoppel applied to bar Appellant relief. (***Id.*** at 4-5; R.R. at 8a-9a).[2] Appellant timely filed a notice of appeal on October 9, 2023, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Appellant raises three issues for our review:

> Did the trial court err and abuse its discretion when it dismissed [Appellant's] complaint to establish paternity and for genetic testing based on the legal theory of presumption of paternity?
>
> Did the trial court err and abuse its discretion when it dismissed [Appellant's] complaint to establish paternity and for genetic testing based on the legal theory of paternity by estoppel?
>
> Did the trial court err and abuse its discretion when it dismissed [Appellant's] complaint to establish paternity and for genetic testing because public policy behind the Commonwealth's interest in protecting the family unit no longer outweighs the child's right to know his or her biological father?

---

[2] The court reiterated these conclusions in its Rule 1925(a) opinion. (***See*** Rule 1925(a) Opinion, filed 10/10/23, at 1-2; R.R. at 24a-25a).

(Appellant's Brief at 4).[3]

In reviewing cases involving a question of paternity, we will not disturb a trial court order absent an abuse of discretion. *Vargo v. Schwartz*, 940 A.2d 459, 462 (Pa.Super. 2007).

> An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough for reversal that we, if sitting as a trial court, may have made a different finding.

*Id.* (quoting *Doran v. Doran*, 820 A.2d 1279, 1282 (Pa.Super. 2003)).

Further:

> "The finder of fact is entitled to weigh the evidence presented and assess its credibility." *Smith v. Smith*, 904 A.2d 15, 20 (Pa.Super. 2006). In so doing, the finder of fact "is free to believe all, part, or none of the evidence and we as an appellate court will not disturb the credibility determinations of the court below." *Id.* (citation omitted).

*Vargo, supra*.

In his first issue, Appellant argues that the trial court improperly applied the presumption of paternity here, where Appellee's extramarital affair with Appellant "undermines…the policy upon which the presumption of paternity in this case is built." (Appellant's Brief at 15). Appellant asserts that the presumption of paternity applies only where the presumption would advance the policy upon which it was built—namely, the preservation of marriage.

---

[3] Appellee has not filed a responsive brief.

Appellant contends that the extramarital affair in this case, along with Appellee's subsequent admissions that Appellant was Child's biological father, eliminates the policy for which the presumption was created. Appellant maintains that Appellee's husband gave no indication that the marriage would be terminated if Appellant was declared the biological father of Child. Appellant submits that permitting genetic testing "would have no more deleterious effect on the marriage than the extramarital affair." (*Id.* at 16). Appellant posits that permitting the presumption of paternity to apply in this case is patently unjust to not only Appellant, but to Child.

Appellant concedes that there is no evidence that Appellee's husband was either sterile, impotent, or without access to Appellee at the time of conception. Nevertheless, Appellant emphasizes Appellee's admission to Appellant that he is Child's biological father. Appellant also acknowledges Appellee's testimony that she had sexual intercourse with both Appellant and her husband during the week of conception. Appellant suggests, however, that the court "failed to give appropriate weight to the fact that no expecting mother would inform the man with whom she was having an affair…that the child belonged to him, instead of her husband, when there was a possibility the child was husband's." (*Id.* at 16-17). Appellant insists that Appellee's admission that Appellant is Child's biological father is a compelling rebuttal to the presumption of paternity. Appellant concludes the court erred in applying

the presumption of paternity in this case, and this Court must grant relief. We disagree.

Our Supreme Court has recently revisited the presumption of paternity in **B.C. v. C.P.**, ___ Pa. ___, ___ A.3d ___, 2024 WL 314097 (Pa. filed Jan. 29, 2024).[4] The Court explained:

> The presumption that a child born to a married woman is the child of the woman's husband has been a part of our common law for centuries, and has been characterized as one of the strongest presumptions known to the law. This legal doctrine was originally referred to as the "presumption of legitimacy" because it was intended to shield a child from the stigma attached in the past to illegitimacy, which subjected the child to significant legal and social discrimination. After the General Assembly eliminated this concern by enacting legislation in 1971 which abolished the legal distinction between "legitimate" and "illegitimate" children, the Court referred to the presumption as the "presumption of paternity."
>
> The presumption of paternity has a second policy justification, which remains today and is at issue in this appeal, relating to the preservation of the marriage and the family unit. …
>
> Traditionally, the presumption of paternity could only be overcome by clear and convincing evidence establishing that the husband did not have access to his wife during the period of possible conception, or that the husband was impotent or sterile. Indeed, the presumption has been held to be otherwise irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage. However, under certain circumstances, the distinct doctrine of paternity by estoppel may apply, and

_____

[4] At the outset, the Court made clear that it would "not address whether the presumption of paternity…as a general doctrine…should be reconsidered" where the parties did not expressly challenge the continued viability of the presumption. **Id.** at *1.

involves a legal determination that, because of a person's conduct, such as holding a child out as his own, the person, regardless of his biological relationship with a child, will not be permitted to deny parentage, nor will a child's mother be permitted to sue a third party for support, claiming that the third party is the biological father.

\*    \*    \*

Questioning the wisdom of the presumption's application due to dramatic societal changes that had arisen since the presumption was created, concerning not only the nature of the relationship between men and women, but also the commonality of separation, divorce, and children born out of wedlock, [in **Brinkley v. King**, 549 Pa. 241, 701 A.2d 176 (1997) (plurality), the Opinion Announcing the Judgment of the Court ("OAJC")] broke with precedent and limited the use of the presumption to cases where the policy underlying the presumption is furthered, rendering the presumption otherwise inapplicable.   The OAJC expressly defined the public policy supporting the presumption of paternity as "the concern that marriages which function as family units should not be destroyed by disputes over the parentage of children conceived or born during the marriage."

…   In [**Strauser v. Stahr**, 556 Pa. 83, 726 A.2d 1052 (1999)], Timothy Strauser filed a custody complaint, asserting that he was the father of the youngest of the three children born to April and Steven Stahr, as demonstrated by blood tests voluntarily submitted by April, the child, and Strauser.   April and Steven invoked the presumption of paternity to defeat Strauser's claim.   The trial court found that: April and Strauser had sex on at least one occasion during the time of the child's conception; April was also having sex with Steven during that time; April and Steven were married when the child was conceived and born, and remained married without ever separating; April had held the child out to the community as Strauser's child, and promoted his relationship with the child; and Steven exhibited an attitude of indifference toward April and the child.

The trial court held that April, having held out her child to be Strauser's and having voluntarily submitted to blood testing, was equitably estopped from contesting the child's paternity. The court also admitted the blood tests into evidence, and concluded that the presumption of paternity was overcome. The Superior Court reversed, holding that the presumption of paternity applied and was irrebuttable because the family had remained intact. This Court affirmed.

Acknowledging that the presumption of paternity had been criticized in **Brinkley**, the Court found the facts in **Strauser** to be distinct, as "the marriage into which [the child] was born continues." The Court emphasized that, "despite the marital difficulties that they have encountered, [April and Steven] have never separated," and, "[i]nstead, they have chosen to preserve their marriage and to raise as a family the three children born to them," including the child at issue. Accordingly, we held that the case fell within the limited circumstances under which, according to the **Brinkley** plurality, the presumption of paternity continued to apply, and was, in fact, irrebuttable.

Notably, in rejecting Strauser's claims that April and Steven Stahr did not enjoy a traditional marriage and family unit because, *inter alia*, the couple had experienced conflict caused by adultery, and April represented to others that Strauser was the child's father, the Court found that such assertions were "not unique," as they indicated that the Stahrs' marriage, like many, "encountered serious difficulties." The Court declared that it "is in precisely this situation, … that the presumption of paternity serves its purpose by allowing husband and wife, despite past mistakes, to strengthen and protect their family." Thus, finding that the presumption was applicable and irrebuttable, the Court deemed unavailing any reliance upon an estoppel theory.

**B.C., supra** at *6-*9 (some internal citations, quotation marks, and footnotes omitted). The Court acknowledged that our courts have narrowed the application of the presumption of paternity over the years "to reflect more

accurately the societal realities of the time. This Court's decisions, however, have held steadfast that there is a single circumstance under which the presumption of paternity continues to apply, and, indeed, is irrebuttable— where there is an intact marriage to preserve." *Id.* at *11.

Under the facts of ***B.C.***, the trial court found that the biological mother and her husband were living together with the child as a family, and their marriage was strong, notwithstanding multiple contentious periods of separation that the couple had endured. *Id.* Our High Court confirmed that the record supported the trial court's finding of an intact marriage. Thus, the Court held that the presumption of paternity applied precisely in this situation, "where the evidence establishes that a marriage and resulting family unit have overcome the seemingly insurmountable odds and remained together after marital infidelity." *Id.* The Court opined:

> Logic dictates that the presumption offers little protection against the heart-wrenching revelations and resulting personal devastation, many times public in nature, that may arise prior to and during the litigation of a paternity dispute, as some, if not all, of these damning events may have already occurred by the time the court is examining whether the presumption applies. The presumption, however, additionally protects against the potential insertion of a third party into the functioning family unit upon resolution of the paternity action. **This protection is warranted whenever the court finds, and the record supports the finding, that an intact marriage exists.**

*Id.* at *11 (emphasis added). Thus, the Court held that while "a marital couple's prior temporary separation is a factor to consider in determining

whether the marriage is intact at the time of the paternity hearing, … such factor is not dispositive." ***Id.*** at *12 (internal footnote omitted).

Instantly, Appellee and Appellee's husband both confirmed that they live together and have a marital relationship. (***See*** N.T. Hearing, 8/21/23, at 6; R.R. at 31a). The trial court expressly found the marriage was intact. (***See id.*** at 33; R.R. at 58a) (stating: "As a factual finding…, I'm going to find that this is an intact marriage. I don't have a choice. Everyone inside it says it's intact"). We see no reason to disturb the trial court's factual finding that Appellee's marriage to her husband is intact. ***See Vargo, supra***.

Under the facts of this case, where the record supports the trial court's determination that Appellee and her husband's marriage is intact, the presumption of paternity applies. ***See B.C., supra***. Further, because Appellee and her husband's marriage is intact, the presumption of paternity is irrebuttable. ***See id.*** Therefore, the trial court properly applied the presumption of paternity in this case, and Appellant's first issue merits no relief.[5]

---

[5] In his second issue, Appellant complains that the trial court improperly applied the doctrine of paternity by estoppel. Because that doctrine applies only in circumstances where the presumption of paternity does not apply, we agree with Appellant that paternity by estoppel is inapplicable here, and we need not discuss further Appellant's second issue on appeal. ***See Brinkley, supra*** at 250, 701 A.2d at 180 (explaining that **if** presumption of paternity has been rebutted or is inapplicable, then court examines whether paternity by estoppel applies, which may operate to bar plaintiff from making claim or bar defendant from denying paternity).

In his third issue, Appellant argues that the public policy behind the Commonwealth's interest in protecting the family unit no longer outweighs a child's right to know his or her biological father. Appellant stresses that the genetic testing he seeks can be performed by a simple oral swab and does not even require a blood draw. Appellant cites to various concurring and dissenting opinions in which Supreme Court Justices have advocated for utilizing genetic testing to rebut the presumption of paternity.

Appellant submits that this case should serve as one to change the law, where the Commonwealth's interest in preserving the marital unit has been eroded by the societal evolution of marriage. Appellant insists that a child's right to know the identify of his/her biological parents should supersede the Commonwealth's interest in preserving the family unit in this modern age. Appellant emphasizes the health and welfare concerns at play regarding genetics. Appellant posits that "[b]y continuing to hold that the Commonwealth's interest in the preservation of marriage is paramount, it is, in effect, saying that it is more important to preserve an entity that may dissolve by itself than to protect the health and welfare of a minor child." (Appellant's Brief at 30-31). Appellant insists such a result is absurd and cannot continue in our society. Appellant concludes that public policy and the passage of time require a change in how courts in Pennsylvania address the presumption of paternity, and this Court must reverse the order denying his petition. For the following reasons, we cannot grant Appellant relief.

In **B.C., supra**, our Supreme Court clarified its holding as follows:

> In closing, we reiterate that this appeal does not present the issue of whether the presumption of paternity has outlived its usefulness in light of contemporary standards. **Unless or until this Court abrogates the presumption of paternity in a case where that issue is preserved and fully developed,** courts in this Commonwealth shall apply the presumption of paternity in the limited circumstances where its purpose to preserve marriage is advanced.

**Id.** at *13 (emphasis added).

Instantly, Appellant invites us to do away with the presumption of paternity. Nevertheless, our Supreme Court has instructed us to continue to apply the presumption in cases where a marriage is intact, **unless or until** the Supreme Court of Pennsylvania abrogates the presumption. **See id.** Although Appellant advances a compelling argument for a change in our law, as an error-correcting court, we are simply unable to afford Appellant the relief he seeks. **See Matter of M.P.**, 204 A.3d 976, 986 (Pa.Super. 2019) (explaining this Court is bound by decisional and statutory legal authority, even when equitable considerations may compel contrary result; "We underscore our role as an intermediate appellate court, recognizing that the Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania"). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>03/05/2024</u>