J-A13003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | | |
|---|---|---|---|
| J. K. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| M. M. | : | No. 1092 WDA 2023 | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| K. M. | : | | |

Appeal from the Order Entered August 7, 2023
In the Court of Common Pleas of Cambria County Civil Division at No(s):
No. 2023-0682

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED: July 1, 2024**

Appellant, J.K., appeals from the order entered on August 7, 2023, which denied Appellant's petition to determine the paternity of minor child C.R.M. ("Child"), who was born in December 2022.  We affirm.

On February 23, 2023, Appellant filed his petition to determine paternity ("Petition"), naming M.M. ("Mother") as respondent.  Within Appellant's petition, Appellant averred that he and Mother were involved in a romantic relationship in 2022 and that he believed Child is his biological daughter.  ***See*** Appellant's Petition, 2/23/23, at 1-2.  Appellant thus requested that the trial

court order Mother "to produce [Child] for genetic testing . . . to determine if [Appellant] is [Child's] natural father." *Id.* at 2.

On May 13, 2023, K.M. ("Husband") filed a petition for leave to intervene in the action. In the petition, Husband averred that he and Mother "dated for a period of seven years and were married on October 22, 2022." Husband's Petition to Intervene, 5/13/23, at 1. According to Husband, since he and Mother were married at the time of Child's December 2022 birth and he is named as the father on Child's birth certificate, he should be granted leave to intervene in the paternity action. *Id.* at 2.

The trial court granted Husband's intervention request on May 17, 2023 and, that day, the trial court held a hearing on Appellant's petition. During the hearing, Appellant testified that he and Mother had a sexual relationship from January 2022 until mid-April 2022. Appellant testified that, during this time, he and Mother "were together probably every other day." N.T. Hearing, 5/17/23, at 7.

According to Appellant, in June 2022, Mother told him that she was pregnant; however, when Appellant inquired as to whether he was the father, Mother told him that he was "crazy and there was a zero percent chance." *Id.* at 9-10. Nevertheless, Appellant believed that he was Child's father "[b]ased on the time frames and the research that [he did]." *Id.* at 13.

Husband also testified at the hearing. He testified that he and Mother were engaged in December 2021 and have been married since October 2022. *Id.* at 15. Further, Husband testified that he was "having sexual relations

- 2 -

with [Mother] at the time of [Child's] potential conception." *Id.* at 18. Finally, Husband testified that: Child is his daughter; he is listed as Child's father on the birth certificate; he attended every doctors' appointment leading up to and following Child's birth; he helped name Child; and, he changed "[e]very single one" of Child's diapers. *Id.* at 15-16.

The trial court denied Appellant's petition on August 4, 2023 and Appellant filed a timely notice of appeal. Appellant raises one claim to this Court:

> Whether the [trial court] either abused its discretion or committed an error of law when it denied Appellant's petition to determine paternity?

Appellant's Brief at 1 (some capitalization omitted).

"In reviewing cases involving a question of paternity, we will not disturb a trial court order absent an abuse of discretion." *Sitler v. Jones*, 312 A.3d 334, 336 (Pa. Super. 2024).[1]

---

[1] The Pennsylvania Supreme Court recently granted allowance of appeal in *Sitler* and agreed to consider the following issues:

> (1) In a published opinion, whether the Superior Court erred in affirming the trial court's dismissal of the Petitioner's complaint to establish paternity and for genetic testing because the legal theory of presumption of paternity has outlived its usefulness in light of contemporary standards and because the public policy behind the presumption of paternity – the Commonwealth's interest in protecting family unity – does not outweigh the child and alleged biological parent's rights and interests?

> (2) If the presumption of paternity is no longer a valid legal theory, whether the Superior Court erred in not addressing

*(Footnote Continued Next Page)*

An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough for reversal that we, if sitting as a trial court, may have made a different finding. . . .

The finder of fact is entitled to weigh the evidence presented and assess its credibility. In so doing, the finder of fact is free to believe all, part, or none of the evidence and we as an appellate court will not disturb the credibility determinations of the court below.

*Id.* at 336-337 (quotation marks and citations omitted).

As this Court has summarized:

The presumption of paternity, *i.e.*, the presumption that a child conceived or born during a marriage is a child of the marriage, has been described by our Supreme Court as "one of the strongest presumptions known to the law." [**Strauser v. Stahr**, 726 A.2d 1052, 1053-1054 (Pa. 1999)]. The policy underlying the presumption is the preservation of marriages.

_____

whether the trial court correctly dismissed the Petitioner's complaint to establish paternity and for genetic testing on the basis of the legal theory of paternity by estoppel when [Wife] admitted that the Petitioner was the biological father, [Wife] prohibited and prevented the Petitioner from having any role in the child's life, and the Petitioner filed for custody just eight (8) days after [Child's] birth?

**Sitler v. Jones**, 2024 WL 2285426, at 1 (Pa. 2024).

Notwithstanding the Supreme Court's grant of the allowance of appeal in **Sitler**, the Superior Court's decision in **Sitler** remains binding on this Court "unless or until [it is] overturned by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme Court." **In re S.T.S., Jr.**, 76 A.3d 24, 44 (Pa. Super. 2013); **see also Sorber v. Am. Motorists Ins. Co.**, 680 A.2d 881, 882 (Pa. Super. 1996).

. . .

> The presumption of paternity is [**irrebuttable**] when, at the time the husband's paternity is challenged, mother, her husband, and the child comprise an intact family wherein the husband has assumed parental responsibilities for the child. Under other circumstances, the presumption may be overcome by clear and convincing evidence that either of the following circumstances was true at the time of conception: the presumptive father, *i.e.*, the husband, was physically incapable of procreation because of impotency or sterility, or the presumptive father had no access to his wife, *i.e.*, the spouses were physically separated and thus were unable to have had sexual relations. In Pennsylvania, impotency/sterility and non-access constitute the only ways to rebut the presumption of paternity. **Notably, blood tests cannot be offered to rebut the presumption of paternity**.

*Vargo v. Schwartz*, 940 A.2d 459, 463-464 (Pa. Super. 2007) (some citations omitted) (emphasis added) (emphasis in original omitted). Further, as our Supreme Court later emphasized: "protection of an intact marriage falls under the limited set of circumstances under which the presumption [of paternity] not only applies, but is irrebuttable." *B.C. v. C.P.*, 310 A.3d 721, 737 (Pa. 2024).

On appeal, Appellant claims that the presumption of paternity does not apply because: Appellant was having a sexual relationship with Mother during the time in which conception would have occurred; Child was conceived prior to Mother and Husband's marriage; and, "it is just as likely that Appellant could be [Child's] father rather than [Husband]." *See* Appellant's Brief at 7-8.

Appellant's claims on appeal fail and the presumption of paternity in favor of Husband cannot be rebutted in this case because: at the time

Appellant filed his petition, Mother, Husband, and Child "comprise[d] an intact family wherein [Husband] has assumed parental responsibilities for [Child];" Husband and Mother have never separated and remain in an intact marriage; Husband testified that, at the time of conception, Husband was having a sexual relationship with Mother; and, there was no evidence that Husband "was physically incapable of procreation because of impotency or sterility." N.T. Hearing, 5/17/23, at 15-16 and 18; *Vargo*, 940 A.2d at 463-464; *see also* Trial Court Opinion, 8/4/23, at 2 (finding, as a fact, that Husband and Mother "have an intact marriage"). Therefore, under our precedent, the presumption of paternity in favor of Husband applies and is irrebuttable. *Cf. B.C.*, 310 A.3d at 736 ("the presumption of paternity applies precisely in this situation – where the evidence establishes that a marriage and resulting family unit have overcome the seemingly insurmountable odds and remained together after marital infidelity"). The trial court thus properly denied Appellant's petition for paternity.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/01/2024